**In re W.G.S.C. ENTERPRISES, INC., f/k/a Hungry Bull, d/b/a Flanders, Debtor.**

**Bankruptcy No. 82–05091A.**

United States Bankruptcy Court, N.D. Georgia.

Jan. 15, 1985.

Ronald E. Barab, Smith, Cohen, Ringel, Kohler & Martin, Atlanta, Ga., for creditors.

Franklin R. Nix, Alston & Bird, Atlanta, Ga., for debtor.

## OPINION

WILLIAM L. NORTON, Jr., Bankruptcy Judge.

Before this Court is an "Application of Fees and Expenses of Attorneys for [Creditors] Sysco-Metro Food Services, Inc. and Institutional Provision Company." The Chapter 11 debtor W.G.S.C. Enterprises, Inc., f/k/a Hungry Bull, d/b/a Flanders has objected to the creditors' application. The primary grounds for the debtor's objection are that the fees and expenses were neither necessary nor productive of any substantial contribution and, consequently, do not appropriately fall within the statutory provision. 11 U.S.C. § 503(b)(3)(D) and (b)(4). For the reasons set forth below, the Court finds that the creditors' attorney is entitled to appropriate fees and expenses.

## FINDINGS OF FACT

1. On October 27, 1982 debtor W.G.S.C. Enterprises, Inc., f/k/a Hungry Bull, d/b/a Flanders filed its Chapter 11 petition.

2. Sysco-Metro Food Services, Inc. ("Sysco-Metro") and Institutional Provision Company ("IPC") were two of the largest unsecured trade creditors of the debtor.

3. On March 10, 1983 notice was sent shortening the time for filing any objections to debtor's proposed settlement and compromise with creditor Hungry Bull, Inc. ("Hungry Bull").

4. On March 18, 1983, eight days later, Sysco-Metro and IPC were appointed to the Committee of Unsecured Creditors pursuant to 11 U.S.C. § 1102.

5. Although the bankruptcy case file does not indicate that any unsecured creditor withdrew from the appointment to the Committee of Unsecured Creditors, evidence presented indicated that Sysco-Metro and IPC were unable to obtain the support of other unsecured creditors on the committee to make it a functioning body.

6. On March 28, 1983, ten days after the Unsecured Creditors' Committee was appointed, the application for settlement

and compromise between the debtor and Hungry Bull was granted.

7. On March 30, 1983 Sysco-Metro objected to the settlement and compromise between the debtor and Hungry Bull.

8. On March 31, 1983 Sysco-Metro filed a motion to vacate the March 28, 1983 order granting the settlement and compromise.

9. It is undisputed that the settlement and compromise between Hungry Bull and debtor was modified by the participation of counsel for Sysco-Metro and IPC.

10. On June 6, 1983 the debtor's reorganization plan and disclosure statement were filed.

11. On December 22, 1983 the debtor's plan for reorganization, disclosure statement, and ballots were mailed to all interested parties.

12. On December 23, 1983 Sysco-Metro and IPC moved to require the debtor to file monthly reports as there had been no filing for the months of October and November 1983.

13. On January 4, 1984 Sysco-Metro and IPC filed an objection to the debtor's reorganization plan. Evidence presented to the Court indicated that creditors Sysco-Metro and IPC had previously communicated to the debtor that the debtor's reorganization plan, which called for repayment of fifty cents on the dollar, would be unacceptable.

14. On January 31, 1984 a modified reorganization plan was submitted.

15. On February 3, 1984 the debtor's modified reorganization plan was approved.

16. On February 17, 1984 the application at issue was filed by creditors Sysco-Metro and IPC.

17. On March 16, 1984 debtor filed an objection to Sysco-Metro's and IPC's application.

18. On April 24, 1984 a hearing on the application was held.

19. Both parties have filed post hearing briefs.

## DISCUSSION

Sysco-Metro and IPC have applied for attorney's fees and expenses pursuant to subsections (b)(3)(D) and (b)(4) of § 503. Creditors have argued that they meet the actual and necessary standard for obtaining fees and expenses and that they had made a substantial contribution in two areas:

(1) The debtor's settlement and compromise with its franchisor Hungry Bull, Inc. was obtained on terms more favorable to the estate through the creditors efforts; and

(2) Debtor's modified and restated plan of reorganization provided for superior treatment of unsecured creditors than that initially proposed by the debtor.

Counsel for creditors has argued that the compensation requested for the legal services rendered is reasonable, and counsel has provided documentation for the fee requested.

Essentially, the debtor has challenged the creditors' application on the following three bases:

(1) That because these creditors were part of the Unsecured Creditor's Committee they were excluded from seeking fees and expenses under § 503(b)(3)(B) by the statutory language "a creditor ... other than a committee appointed under § 1102 of this title ...";

(2) That the services were not necessary; and

(3) That the services did not make a substantial contribution to the Chapter 11 estate.

In terms of the debtor's first argument, the strongest decision supporting the debtor's position is *In re Major Dynamics*, 16 B.R. 279 (Bkrtcy. SD CA, 1981). That decision flatly stated that "read as a whole [§ 503(b)(3)(D)] does not provide for reimbursement to a creditor who is also a member of the § 1102 official creditors' committee." *Id.* at 280. The *Major Dynamics* court's conclusion followed from reasoning about the Technical Amendments Act which had not yet been adopted by Congress.

The House Report on the proposed Technical Amendments Act which has not yet been adopted by Congress states regarding § 503 that it "adds a new paragraph providing for administrative expense treatment of expenses incurred by individuals in connection with their official responsibilities as members of a creditors' committee." H.R.Rep. No. 1195, 96th Cong. 2d Sess., 13 (1980). The Senate Report states that the amendment "makes technical corrections to make clear that the expenses of a creditor's committee in a reorganization case are allowable as administrative expenses." S.Rep.No. 150, 97th Cong., 1st Sess., 13 (1980).

*Id.* at 280.

In contrast to the *Major Dynamics* opinion is *In re Grynberg*, 19 B.R. 621 (Bkrtcy. D CO, 1982). The *Grynberg* court expressly declined to follow the reasoning of *Major Dynamics.* In *Grynberg* the statutory language of § 503(b)(3)(D) was found only to "bar[s] the compensation of Chapter 11 creditors' *committee[s]* ". *Id.* at 622. There was no bar to reimbursement of individual creditors who were committee members if they could demonstrate that fees and expenses were actual, necessary, and made a substantial contribution to the estate. *Id.* at 623. While this Court finds that the *Grynberg* decision is the better reasoned, the applicability of either decision may be questioned. In both *Major Dynamics* and *Grynberg* an individual creditor sought reimbursement for expenses incurred *while acting as a member of the § 1102 Official Creditors' Committee.* In the instant circumstances, Sysco-Metro and IPC are not seeking reimbursement for monies expended while acting as members of the § 1102 Official Creditors' Committee. The evidence before the Court is that the Official Creditors' Committee was a non-functioning body. Sysco-Metro and IPC contend they come to the Court as individual creditors who have expended actual and necessary resources and have made a substantial contribution to the estate. Consequently, they argue they are entitled to reimbursement under § 503(b)(3)(D) and (b)(4). The Court finds no inherent bar in the statutory language.

## NECESSARY AND SUBSTANTIAL

■ Counsel for debtor has put forward several arguments to show that applicant's work was not necessary and not substantial. The Court finds the arguments unconvincing. Debtor's counsel contends that the veto power which Sysco-Metro and IPC held over the debtor's reorganization plan was sufficient in itself, without assistance of creditors' counsel, to force the debtor to provide certain items in the plan. Legal efforts on counsel's part were, therefore, "unnecessary" to the submission of a satisfactory plan. The events which have occurred in the instant circumstances, however, do not support the debtor's arguments. First, the evidence before this Court is that despite information from Sysco-Metro and IPC that they would reject a plan which would only repay fifty cents on the dollar, the debtor's reorganization plan contained such a proposal. Efforts by the applicant to modify that portion of the plan were thus "necessitated" directly by the debtor.

Moreover, there is no requirement that creditors engage in pro se efforts in dealing with an entity who has filed a bankruptcy petition. The applicant testified that he and his firm were consulted by Sysco-Metro and IPC to assist the creditors in understanding what their rights were and how to protect those rights. The statutory language under which the applicant has sought fees and expenses does not require stellar legal acumen as the debtor has argued. The standard is a "substantial contribution" made through professional services "rendered by an attorney ... based on the nature, the extent and the value of such services, and the cost of comparable services ...". Upon review the items listed in the application consist of the activity attorney's undertake to preserve their client's rights and would, therefore, be compensable if the substantial standard is met.

Debtor's counsel has argued that neither the modification to the settlement with Hungry Bull nor the modification to the reorganization plan amounted to a "substantial" contribution. Again, debtor's counsel is not persuasive. First, with regard to the Hungry Bull settlement, Sysco-Metro and IPC objected to the proposed compromise and requested certain modifications.

There has been some controversy over the timeliness of Sysco-Metro's and IPC's objection to the Hungry Bull settlement. The Court notes that the time for objections had been shortened by request of the debtor and Hungry Bull. Further, the Unsecured Creditor's Committee was not appointed until eight days after the notice regarding the proposed settlement and compromise which was only ten days before the Court granted leave to settle. Debtor's counsel has asserted Sysco-Metro and IPC's written objection was filed after the time had expired for filing an objection and after the Court had already granted the proposed settlement. Because the Court had been unaware of any parties' objection and because a snow storm had closed the Bankruptcy Clerk's office and prevented a timely filing, this Court determined that the objection would be considered despite this Court's earlier order granting leave to compromise.

The modifications to the settlement and compromise secured by Sysco-Metro and IPC were essentially two: (1) Hungry Bull was to be prohibited from exercising its security interest for three years; and, (2) in the event of any default by debtor to Hungry Bull, creditors were to receive notification of the default and the right to cure. The first provision was at least partially the result of applicants' investigating records and ascertaining that Hungry Bull did not hold a properly perfected interest. Debtor has argued, nevertheless, that the three year prohibition was not substantial but rather illusory: Georgia State Bank held a first priority and could have wiped out Hungry Bull's interest by foreclosing. The Court notes that while Georgia State Bank ultimately was found to be a secured creditor it appears that at the time of debtor's proposed settlement and compromise with Hungry Bull, Georgia State Bank was listed merely as an unsecured creditor.

Moreover, the debtor has impugned the substantiality of the second modification on the grounds that the presumption the creditors would use the notice and cure provision was too speculative. The debtor has not yet defaulted in its settlement with Hungry Bull and, therefore, the modification should not be deemed substantial. The Court finds this objection to be without merit. The failure of the creditors to have an opportunity to use this provision does not make the right this provision grants to the creditors insubstantial. Daily, parties negotiate provisions which, while not used, may nevertheless be of considerable value.

Additionally, the debtor has attacked the value of the notice and cure provision by acknowledging that it had received from Hungry Bull a notice and cure provision long before the applicant made any appearance. Therefore, granting this right to the creditors was not a substantial protection caused by the applicant's efforts. The Court finds that the debtor's proposed settlement with Hungry Bull did not provide notice and cure provisions to the creditors until the applicant appeared. Again, the applicant's efforts seemed necessary to gain for the creditors the same rights which the debtor had received. There is no reason to assume nor has a reason been given that the accommodation which the debtor had negotiated for itself would be less desireable to the creditors. On this basis alone the modification was substantial to the interests of the unsecured creditors of the estate, and therefore within the statutory language of § 503(b)(3)(D) and (b)(4).

With regard to the debtor's proposed Chapter 11 plan the debtor has argued that the increase from fifty percent to one hundred percent to unsecured creditors cannot be classified a substantial contribution. The debtor points to the speculative nature of the additional payment. Unsecured

creditors would only receive the extra money if the economy does not take another "nosedive" in the third and fourth years. While the debtor's analysis appears accurate, e.g., the creditors will not receive the extra fifty percent in the third and fourth years if the economy nosedives, the Court's inability to foresee the future economy does not justify depriving counsel of fees for a modification that is obviously substantial and beneficial to unsecured creditors.

Nor does the fact that Sysco-Metro and IPC benefitted themselves from the modifications bar the applicant's receipt of compensation.

> Section 503(b)(3) and (4) authorizes compensation for legal services rendered in making a substantial contribution to a Chapter 11 case. 11 U.S.C. § 503(b)(3), (4). This is so even if services rendered by counsel are for its client. The correspondence of Weil's self-interest in serving its clients, the Banks and the interests of the Debtors in a successful reorganization, does not bar compensation to Weil from the Debtors. Otherwise, creditor participation in reorganization might be discouraged. The appropriate test of compensable services is whether they substantially contributed to the successful result. [Citations omitted].

*In re Richton Intern. Corp.*, 15 B.R. 854, 856 (Bkrtcy. SD NY, 1981).

### APPLICATION OF JOHNSON FACTORS

Having determined, then, that creditors' attorney's fees and expenses are to be compensated pursuant to § 503(b)(3) and (4), the Court is ready to apply the Johnson Factors to the documented fees and expenses submitted by the applicant. *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (CA 5, 1974).

#### (1) *Hours Spent and Time and Labor Involved*

■ Applicant has set forth clearly and in sufficient detail the time spent, the nature of the services, who performed those services, and the rate at which those services were charged out. There is one area of charges which this Court finds noncompensable. The effort associated with organizing the Creditors' Committee should not be compensated. In the instant circumstances Sysco-Metro and IPC were not successful in organizing a functioning Creditors' Committee and, in part, are being compensated for the work done in the absence of such a functioning body. Therefore, the applicant is instructed to compute the amount of money expended in those efforts and to deduct them from the total amount requested.

#### (2) *Novelty and Difficulty of the Questions*

■ Creditors' counsel asserted that there were few novel or overly difficult questions. The Court accepts this analysis with one change. The question of attorney's fees and expenses being compensated pursuant to § 503(b)(3) and (4) was a novel question. For this reason, the Court will allow the amount requested for the preparation of the fee application. Ordinarily, the time expended to prepare a fee application is largely administrative and not compensable at the same rate as that for legal services. *Rose Pass Mines, Inc. v. Howard*, 615 F.2d 1088, 1092–93 (CA 5, 1980). In the instant circumstances, however, the preparation has required the application of legal knowledge and expertise.

#### (3) *Skill Required to Perform the Legal Services Properly*

The applicant engaged in negotiations and drafting of modifications to a settlement and proposed Chapter 11 plan which inured to the benefit of general unsecured creditors.

#### (4) *Preclusion of Other Employment*

Applicant does not claim that representation of creditors in this Chapter 11 case proved an excessive disruption to the applicant's law practice.

#### (5) *Customary Fee*

Applicant's fee appears within the customary norm. Applicant is to be commended for attempting to provide services at the lowest rate of competency as possible, e.g., where work could be performed by a paralegal or junior associate rather than a senior associate or senior partner it was.

#### (6) *Where the Fee is Fixed or Contingent*

Applicant's fee to creditors was at a fixed hourly rate.

#### (7) *Time Limits Imposed by the Clients or Other Circumstances*

There were several periods, especially, at the commencement of the applicant's activity, in which time constraints were significant.

#### (8) *Amount Involved in the Results Obtained*

As demonstrated in the first portion of this opinion, the applicant's effort resulted in a significant contribution.

#### (9) *Experience, Reputation, and Ability of the Attorneys*

Applicant is recognized as having experience and expertise in the bankruptcy field.

#### (10) *Undesireability of the Case*

Applicant does not contend that the representation had any undesireable features.

#### (11) *Nature and Length of the Professional Relationship With the Client*

Applicant's representation of these clients did not exist prior to January 1983.

#### (12) *Awards in Similar Cases*

Reasonable fees have been awarded to creditors' counsel for similar work.

For the reasons set forth above this Court GRANTS the Applicant's request for fees and expenses. The Court has directed that the applicant deduct the amount of money associated for services performed in organizing the Unsecured Creditors' Committee. That amount shall be subtracted from the applicant's request for fees and expenses in the amount of $11,778.57. The debtor is then directed to pay that amount.

IT IS SO ORDERED.