EDITH HOLLAN JONES, Circuit Judge:
Court-approved counsel for the debtor and non-court approved counsel for a group of disgruntled shareholders appeal from an order of the district court, 49 B.R. 467 (Bankr.N.D.Tex.1985), which affirmed the bankruptcy court’s determination of their fee applications. Whether the bankruptcy court abused its discretion or clearly erred in denying compensation claimed for professional services rendered by the shareholders’ attorneys pursuant to 11 U.S.C. §§ 503(b)(3)(D) and 503(b)(4) (1984) and in failing to provide a bonus to debtor’s counsel are the principal issues in this case. With one exception, we find ample support in the record for the lower courts’ conclusions.
I. BACKGROUND
The debtor, Consolidated Bancshares, Inc. (Consolidated or debtor), is a holding company for shares of Abilene National Bank (ANB). In the early 1980’s, ANB experienced financial difficulties (largely because of oil-related loans), and after a series of adverse bank examinations, the FDIC demanded that the bank raise an additional $30,000,000 capital. Principals of Consolidated contracted for a $16,000,-000 capital infusion and requested additional time to raise the rest of the requirement.
Refusing to grant the extension, of time, the regulatory agencies gave ANB an ultimatum: ANB could either be closed immediately and taken over by federal agencies, or it could be acquired by Mercantile Texas Corporation in satisfaction of a note. The officers of Consolidated decided to and did transfer ownership of ANB to Mercantile.
Some of Consolidated’s shareholders disagreed with this course of action and filed a shareholders’ derivative suit in state court in September, 1982 against Consolidated, certain of its officers and directors, and Mercantile. The shareholders, referred to as the “Grubbs group,” have been represented by the law firms of Ray & Terrell, and Pierson & Gaylen, appellants herein. On a defense motion, venue of the lawsuit was transferred to Dallas County, Texas. No further action in this lawsuit was undertaken until after the bankruptcy petition was filed. The shareholders removed the lawsuit to bankruptcy court in the fall of 1984. A scheduling conference was set in the adversary proceeding but was never held because of the filing of a plan of reorganization.
On December 3, 1982, the instant Chapter 11 case was filed. An equity shareholders’ committee (the Committee) was formed to represent the interests of all shareholders of the debtor,[1] and the bankruptcy court authorized the Committee to retain counsel on May 9, 1983 to further these interests.
The debtor instituted two lawsuits against Mercantile Bank which questioned the stock transfer. Debtor commenced an adversary proceeding for damages from Mercantile exceeding $56,000,000 under a fraudulent conveyance theory. In a separate adversary proceeding, the debtor successfully sought to enjoin Mercantile from foreclosing under certain stock pledges.
Sometime during the summer of 1984, the debtor, banks, and Committee began negotiations which culminated in the filing of a proposed plan of reorganization. The plan called for a global settlement of the three lawsuits pending among the debtor, the Bank and the Grubbs group. It provided that all creditor claims would be satisfied in full and that the shareholders would receive benefits from a settlement fund which initially totalled $5.4 million. Additionally, all three lawsuits would be dismissed with prejudice.
The Grubbs group objected to confirmation of the plan by attacking the bankruptcy court’s power to settle the derivative *1252 lawsuit over their opposition. The court overruled this objection at the close of the confirmation hearing, confirmed the plan, and the three lawsuits were dismissed shortly thereafter. The order of confirmation has not been appealed.
II. STANDARD OF REVIEW
This court reviews the bankruptcy court’s findings of fact under the clearly erroneous standard, see Bankr.R.P. 8013; Richmond Leasing Co. v. Capital Bank, N.A., 762 F.2d 1303, 1308 (5th Cir.1985), but the bankruptcy court’s conclusions of law are subject to de novo review. Richmond Leasing Co., 762 F.2d at 1307. This court is mindful of the fact that, absent such errors, “district courts and bankruptcy judges have broad discretion in determining the amount of attorneys’ fees to award as compensation for services performed in connection with bankruptcy proceedings, and their exercise of that discretion will not be disturbed by an appellate court absent a showing that it was abused.” In re First Colonial Corp. of America, 544 F.2d 1291, 1298 (5th Cir.), cert. denied, 431 U.S. 904, 97 S.Ct. 1696, 52 L.Ed.2d 388 (1977).
III. THE GRUBBS GROUP FEE APPLICATION
Grubbs’s attorneys filed fee applications seeking from this bankruptcy estate an allowance of $231,947.50 for their services. The Committee, the debtor and the United States Trustee for the Northern District of Texas unanimously contested the applications. After a hearing, the bankruptcy court refused to award fees because it could not “find that [the Grubbs group attorneys’] actions made a ‘substantial contribution’ to the proceeding.” The court based this finding on several factors. First, an equity security holders’ Committee, appointed by the bankruptcy court, officially represented all shareholders of the estate. Therefore, any work performed by the attorneys for the Grubbs shareholder group after the formation of the committee had resulted in a needless duplication of time and effort. Second, the bankruptcy court found that the shareholder suit was not handled in the most expeditious and efficient manner and was motivated by Grubbs’s personal interest in ANB and not for the benefit of the Chapter 11 estate. Third, the bankruptcy court found that the derivative action was merit-less because the pending state lawsuit became property of the estate once the bankruptcy petition was filed. As such, the lawsuit could have been dismissed for lack of a proper party plaintiff, i.e., the debtor, and therefore had little value to the bankruptcy estate.
The Grubbs group attorneys contend that the bankruptcy court erred for three reasons. First, they believe their derivative action was the real motivating factor behind the filing and confirmation of a successful plan, hence its pursuit made a substantial contribution to the estate. Second, the bankruptcy court erred legally because its opinion assumed a duplication of services without comparing the Grubbs attorneys’ activities with those of the court-appointed Committee. Finally, the Grubbs group argues that the bankruptcy court erred as a matter of law because it did not “[opine] as to the value of the derivative action.”
The applicable sections of the Bankruptcy Code provide that the court may award the actual, necessary expenses incurred by a creditor, including his attorneys’ fees, if he has made “a substantial contribution in a case under chapter 9 or 11 of this title.” 11 U.S.C. §§ 503(b)(3)(D), 503(b)(4) (1984). The legislative history is not fully instructive for the present case.[2]
*1253 However, the policy aim of authorizing fee awards to creditors is to “promote meaningful creditor participation in the reorganization process.” In re General Oil Distributors, 51 B.R. 794, 805 (Bankr.E.D.N.Y.1985); In re Calumet Realty Co., 34 B.R. 922, 926 (Bankr.E.D.Pa.1983). Further, “services which substantially contribute to a case are those which foster and enhance, rather than retard or interrupt the progress of reorganization.” In re White Motor Credit Corp., 50 B.R. 885, 892 (Bankr.N.D.Ohio 1985) (quoting In re Richton Intern’l Corp., 15 B.R. 854, 856 (Bankr.S.D.N.Y.1981)). Compensation has been denied where the services rendered by the creditor or shareholder were only “remotely related to the reorganization,” In re General Oil Distributors, 51 B.R. at 806, on the theory that “a creditor’s attorney must ordinarily look to its own client for payment, unless the creditor’s attorney rendered services on behalf of the reorganization, not merely on behalf of his client’s interest, and conferred a significant and demonstrable benefit to the debtor’s estate and the creditors.” Id. (emphasis added). The inquiry regarding a substantial contribution is one of fact.
Appellants anomalously contend that their derivative lawsuit was the real motivation behind the successful plan which was confirmed. If that is true, the success of the Grubbs group fee application will place them in a “Heads I win, tails you lose” position. They objected to the “successful plan” and prolonged the confirmation hearing by claiming that the plan could not involuntarily compromise their derivative action. Having lost that fight, they claim victory for the entire estate attributable to their efforts to “further” the plan. Their position is clearly distinguishable from that of the creditor in In re W. G.S. C. Enterprises, 47 B.R. 53 (Bankr.N.D.Ga. 1985), whose objection to confirmation resulted in a modification of the plan from a 50% to a 100% payout for all unsecured creditors, substantial modification of settlement agreements, and other benefits. On
its face, the opposition of the Grubbs group inflated the confirmation hearing attorneys’ fees, which were charged to the estate by all officially appointed counsel. Such activity certainly retarded or interrupted the progress of reorganization, especially when viewed in the context of a plan that called for a 100% payout of all debt and a $5.4 million settlement fund to satisfy the claims of equity security holders.
Moreover, the mere pendency of the Grubbs group action does not constitute a “substantial contribution” toward the debt- or’s reorganization. According to the record before this court, the action never came close to being ready for trial. No depositions and negligible written discovery occurred. Only two or three court hearings, concerning venue and a plea to the jurisdiction, were held. The legal services rendered to the Grubbs group consisted largely of research and telephone conversations among counsel and their clients. Counsel did not participate in meetings of the Committee, failed to consult with Committee counsel about the derivative action, and never participated in the multi-party negotiations to formulate a plan. It was within the soundly exercised discretion of the bankruptcy court to conclude, faced with tangible efforts of this “minitude” and achievements that were contradicted by other parties in the bankruptcy, that the Grubbs group did not substantially contribute to reorganization.
Appellants’ second contention is that the bankruptcy court erred by not valuing the derivative action to the bankruptcy estate. The bankruptcy court did conclude that the value of this derivative lawsuit was minimal in light of the fact that it was not being pursued by the proper party, specifically, the debtor or trustee. Under 11 U.S.C. § 323 (1984), the trustee or debtor in possession is the representative of the estate, and may sue and be sued. If an action belongs to the corporation under Texas law, then the action becomes property of the estate once the bank *1254 ruptcy petition is filed. In re Mortgageamerica Corp., 714 F.2d 1266, 1276 (5th Cir.1983). The lawsuit was never abandoned to the Grubbs group to prosecute. Under similar circumstances, such lawsuits have been dismissed, Mitchell Escavators, Inc. v. Mitchell, 734 F.2d 129, 132 (2d Cir.1984).
Moreover, a shareholder can maintain a derivative suit only when the complaint alleges that the shareholder demanded the trustee to bring suit. See Kemper v. American Broadcasting Co., 365 F.Supp. 1272 (S.D.Ohio 1973). “Only demonstrable futility or the actual refusal of a demand ... can abrogate the Rule 23.1 prerequisite of such demand for prosecution of a corporate cause of action.” Id. at 1274. The record does not support a finding that the Grubbs group asked the debtor to take over its derivative action once the bankruptcy was filed. Since the debtor has never abandoned the cause of action, the bankruptcy court correctly found the lawsuit was of minimal value because it could be dismissed.
Inherent in the bankruptcy court’s finding that the efforts of the Grubbs group were duplicative of the equity security holders’ committee is the basic premise of the Bankruptcy Code that the bankruptcy court has broad supervisory powers over professional persons who render services for the estate.[3] This Circuit has stated that the bankruptcy statute and rules require court approval of an attorney for the debtor’s estate and contemplate that such approval will be required in advance of such employment and only after the showing now required by statute. In re Triangle Chemicals, Inc., 697 F.2d 1280, 1289 (5th Cir.1983). We see no reason to modify this rule. Were the Grubbs group fee applications to be approved, the purpose of the Bankruptcy Code’s scheme for compensation of professionals would be thwarted. The Grubbs group, despite being informed by debtor’s attorney of the requirement to secure formal retention in order thereafter to seek compensation,[4] failed to comply with the strict provisions of the Code and Rules. They never met with or advised the official Committee, much less the court of their activities until the objections to confirmation and filing of a quarter-million-dollar fee application. The conduct of activities parallel to but not coordinated with those of an official committee, wholly outside of supervision by the bankruptcy court and scrutiny by the debtor and other officially appointed professionals, cannot be compensated.
Since the Grubbs group eschewed compliance with the Code and Rules, the court was well within its discretion in denying them fees based on the competent representation afforded to all shareholders by the Committee. This is reinforced by the fact that there were no objections to the modest fees requested by attorneys for the Committee and no dispute over the statement by counsel for the Committee that they “followed and participated in every way we thought was necessary in watch-dogging the debtor.” The bankruptcy court, 49 B.R. 467, found this testimony credible and denied fees to the Grubbs group in part because of duplication of services. There being support in the record for this conclusion and no evidence that services rendered by Grubbs’ attorneys were actually different from or more *1255 beneficial than those rendered to the Committee, Grubbs’s argument is rejected.
We conclude that the District Court acted properly in affirming the denial of the Grubbs group’s attorneys’ fee applications.
IV. FEE APPLICATIONS OF DEBTOR’S ATTORNEYS
Cross-appeals were filed concerning the bankruptcy court’s final award of fees and expenses to Creel & Atwood in the amount of $224,226 and Jack Bryant for $36,906. The Grubbs group contests these awards as too high, while debtor’s counsel claim they should have received a bonus or contingency award for their successful efforts toward reorganization. All but one of these contentions lack merit.
Fees of debtor’s counsel should be denied in toto, according to the Grubbs group, because of a conflict of interest, a contingency fee arrangement, and the request by debtor’s counsel that the court approve a fee-splitting arrangement. As will be seen in the following discussion, these are serious allegations, even if they were not substantiated against counsel in this case, and a hearing was certainly appropriate to determine their validity. It is surprising indeed that these allegations were made only by counsel for an independent group of shareholders who were not guaranteed payment of their fees through the bankruptcy estate.[5] Too frequently, court-appointed counsel for debtor and the official creditor committees’ interests in a case, sharing the mutual goal of securing approval for their fees, enter into a conspiracy of silence with regard to contesting each other’s fee applications. (One bankruptcy judge characterized this process as a “massive backscratching exercise.”) This is a violation of their duties as fiduciaries not only to their specific clients but to the interests of the debtor’s estate. In re Arlan’s Department Stores, 615 F.2d 925, 941 (2d Cir.1979). The numerous limitations imposed by the Bankruptcy Code upon compensation of court-appointed counsel, cited passim, are designed to insure the highest standards of ethical conduct and minimize the overhead expenses which can easily deplete a debtor’s estate. Vigilance is required by and among court-appointed counsel in particular to enforce the standards of the Code. If such counsel would scrutinize each other’s fee applications with the dedication that they pour into preparing their own, the compensation scheme of the Code would be fully vindicated. At the least, they should inform the court in writing, as and when interim fee applications for other parties are filed, that they have reviewed such applications carefully, indicate whether or not such applications are reasonable and whether they are based on any impermissible grounds. Such a procedure could be reinforced or varied by the adoption of specific local bankruptcy rules; however, we believe that some such vehicle is necessary tó screen and control any possible abuses of compensation and to compel court-appointed counsel to perform their fiduciary duty.
Whether the fees of Jack Bryant should have been denied because of an actual conflict of interest, based on his representation of at least one director of the debtor in several pieces of litigation, is unsatisfactorily resolved by the trial court record. Bryant confirmed at the hearing that he continues to represent at least one officer or director of the debtor and ANB in the Skytop Brewster and Goltz litigation. Further, Bryant stated that he did not investigate the acts of the directors for potential liability to the estate, but the FDIC, following ANB’s demise, did conduct such an investigation which culminated in litigation challenging the action of the bank’s directors and officers. Despite this testi *1256 mony, the bankruptcy court found “that the facts concerning Mr. Bryant’s representation of former officers and directors of the debtor were fully developed ... and were not of such a nature as to deny payment to him of any fees.” In light of Bryant’s testimony, a bare bones conclusion that there was no actual conflict of interest does not provide sufficient information to permit effective appellate review.
The Bankruptcy Code requires that an attorney who would be employed by the debtor’s estate must be disinterested and may not hold or represent an interest adverse to the estate. 11 U.S.C. §§ 101(13), 327 (1984). A major treatise on bankruptcy states that the requirement of disinterestedness
appears broad enough to include anyone who in the slightest degree might have some interest or relationship that would color the independent and impartial attitude required by the Code____ Indirect or remote associations or affiliations, as well as direct, may engender conflicting loyalties. The purpose of the rule is to prevent even the emergence of a conflict irrespective of the integrity of the person under consideration____
2 Collier on Bankruptcy § 327.03 at 327-19, 20 (15th ed. 1985) (footnotes omitted).[6] To prevent conflicts, the Code provides several check points. Section 329 requires the applicant to file a statement of compensation paid or contracted for in connection with the case, and Rule 2016(b) requires that statement to be filed prior to the first date set for the first meeting of creditors. Section 328(c) provides that the court may deny compensation if the applicant becomes disinterested or represents or holds an adverse interest at any time during the case.
The Supreme Court has stated, “[w]here an actual conflict of interest exists, no more need be shown in this type of case to support a denial of compensation.” Woods v. City Nat’l Bank and Trust Co. of Chicago, 312 U.S. 262, 268, 61 S.Ct. 493, 497, 85 L.Ed.2d 820 (1940). See In re Georgetown of Kettering, Ltd., 750 F.2d 536, 540 (6th Cir.1984). This Circuit is sensitive to preventing conflicts of interest and requires a “painstaking analysis of the facts and precise application of precedent.” Brennan’s v. Brennan’s Restaurant, Inc., 590 F.2d 168, 173-74 (5th Cir.1979). Consequently, on remand of this single issue, the bankruptcy court should make such additional findings and conclusions, on an enlarged record if necessary, in order to elucidate whether Bryant’s admitted dual representation created a legally disabling conflict of interest.[7]
In contrast to the charge of conflict of interest, we find no merit in the Grubbs group’s complaint concerning fee-splitting or debtor’s counsel’s desire to be *1257 awarded a contingency fee. Fee splitting among attorneys is expressly proscribed, with very limited exceptions, pursuant to 11 U.S.C. § 504 (1984). Early on in this bankruptcy case, the court expressly disapproved what it found to be a fee-splitting arrangement between Bryant and Creel & Atwood and required both firms to return the affected amounts to the estate. This court assumes that order remedied any potential violation of § 504, rendering the Grubbs group issue moot. As to the allowance of a contingency fee, the fact that debtor’s counsel made an agreement with the debtor to obtain such a contingency does not require the bankruptcy court to approve it, and the bankruptcy court specifically declined to be bound by the agreement. 11 U.S.C. § 328(a) (1984). Merely having requested a contingency fee, in other words, should not prevent competent counsel from receiving proper compensation for services rendered.
We must next consider whether, as is contended by debtor’s counsel, the bankruptcy court abused its discretion in failing to award a bonus recovery or remuneration based upon a $250 hourly rate. Debtor’s counsel perceive an irreconcilable conflict between the court’s refusal and the fact that they “accomplish[ed] a substantial recovery [for the estate], money which would have been totally lost but for their efforts.” Rose Pass Mines, Inc. v. Howard, 615 F.2d 1088, 1092 (5th Cir.1980).
We believe, however, that the bankruptcy court operated within its discretion to determine that a bonus or enhancement was not warranted in this case. The statute provides that an attorney may be awarded “reasonable compensation for actual, necessary services.” 11 U.S.C. § 330(a)(1) (1984). A high level of expertise in a complicated reorganization ease does not automatically warrant a bonus. Southwestern Media Inc. v. Rau, 708 F.2d 419, 428 (9th Cir.1983). Moreover, the attorneys for the debtor had the opportunity at the evidentiary hearing to show that the settlement achieved in the case would have been lost but for their efforts. From the record, this court can discern no abuse of discretion in the bankruptcy court’s ruling that the fine job done by debtor’s attorneys is properly compensable by their hourly rate without a bonus. For “despite the result being successful here, it is also the result Congress contemplated in enacting Chapter 11 of title 11.” In re Union Cartage Co., 56 B.R. 174, 178 (Bankr.N.D.Ohio 1986). We note in passing that the case relied on by debtor’s counsel stands only for the proposition that the bankruptcy judge does not abuse his discretion when he enhances a fee for a job performed in an excellent manner. Rose Pass Mines, 615 F.2d at 1092. Similarly, a bankruptcy judge does not abuse his discretion when he decides not to enhance the hourly fee with a bonus.
Debtor’s attorneys’ final contention is that the bankruptcy court erred in not awarding them compensation at the hourly rate of $250. We find no abuse of discretion in the bankruptcy court’s conclusion. The bankruptcy court stated:
This hourly fee — $175.00 per hour — is awarded only to the most abled and skilled bankruptcy practitioners in successful cases in this area. Under the circumstances of this case, this Court finds that the high hourly rate of $175.00 per hour adequately compensates the applicants according to their skill, the novelty and difficulty of the questions they addressed, and their experience, reputation and ability.
This Circuit requires an evidentiary hearing on disputed factual issues with the burden on the applicant to establish the value of his services. In re U.S. Golf Corp., 639 F.2d 1197, 1207 (5th Cir.1981). Such an evidentiary hearing was held in this case, and the bankruptcy court made specific findings to satisfy the Johnson criteria. Johnson v. Georgia Highway Express, Inc., 488 F.2d 714, 717-19 (5th Cir.1974). Attorneys Bryant and Atwood justified their fees in a narrative fashion before the court. Contrary to the Grubbs group contention, they were not required by the bankruptcy judge to take the oath. Their *1258 statements were made as officers of the court.[8] During this presentation, their fee applications and time records were submitted into evidence without any objection and are thus properly before this court. The record supports the bankruptcy court's award to Creel & Atwood, and to Bryant if there is no impermissible conflict of interest.
In conclusion, the bankruptcy court’s award of fees, embodied in the judgment of the district court, is AFFIRMED with the exception of the award to Jack Bryant. The sole issue of a possible conflict of interest in Bryant’s representation shall be REMANDED for elaboration of the court’s findings and conclusions.
Affirmed in Part,
Vacated in Part and Remanded.

. The Bankruptcy Code provides for the appointment of creditors’ committees, including a committee of equity security holders, as soon as practicable after the bankruptcy petition is filed. 11 U.S.C. § 1102 (1984).

. The phrase "substantial contribution in the case” is derived from Bankruptcy Act §§ 242 and 243. It does not require a contribution that leads to confirmation of a plan, for in many cases, it will be a substantial contribution if the person involved uncovers facts that would lead to a denial of confirmation, such as fraud in connection with the case. H.R.Rep. No. 595, 95th Cong., 1st Sess. 355, reprinted in 1978 U.S. Code Cong. & Ad.News 5787, 6311. Reference to case law interpreting prior sections of the Bankruptcy Act yields general policy statements *1253 that are embodied in the Code decisions cited above.

. 11 U.S.C. § 327(a) (1984) states:
Except as otherwise provided in this section, the trustee, with the court’s approval, may employ one or more attorneys, ... that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the trustee in carrying out the trustee's duties under this title,
(emphasis added)
Professionals are compensated pursuant to § 330. The applicant must follow the strict guidelines of Bankruptcy Rule 2014 in being appointed, and Rule 2016 to receive compensation from the estate. This procedure was not followed by the Grubbs's attorneys.

. The proper vehicle would have been the filing of an application to serve as special counsel to the Committee for the purpose of prosecuting the derivative action. At that time, any conflicts of interest or objections by the parties in interest would have been aired and the terms of employment specifically approved.

. The U.S. Trustee for the Northern District of Texas did object to the fee applications of the Grubbs group and of debtor’s counsel only insofar as the latter sought a contingency fee, discussed infra. This is the only district in the Fifth Circuit which serves as a "pilot district” for the U.S. Trustee program. See 11 U.S.C. §§ 1501 et seq. (1984). The existence of such a program does not relieve court-appointed counsel of their independent duty to help control administrative costs of bankruptcy.

. The standards for the employment of professional persons are strict, for Congress has determined that strict standards are necessary in light of the unique nature of the bankruptcy process. In re Cropper Co., 35 B.R. 625, 629 (Bankr.M.D.Ga.1983). "[Professionals engaged in the conduct of a bankruptcy case should be free of the slightest personal interest which might be reflected in their decisions concerning matters of the debtor’s estate or which might impair the high degree of impartiality and detached judgment expected of them during the course of administration" In re Philadelphia Athletic Club, Inc., 20 B.R. 328, 334 (E.D.Pa. 1982) (quoting I Collier Bankruptcy Manual § 101.13 (1981)).

. The court should be guided by the principle that court-appointed attorneys are officers of the court, and fiduciaries, see In re Bohack Corp., 607 F.2d 258, 264 (2d Cir.1979), and the court must strictly apply the equitable principle that a fiduciary can only serve one master. Woods v. City Nat'l. Bank, 312 U.S. at 269, 61 S.Ct. at 497. Several cases have denied fees in total when a conflict of interest is present. See, e.g., In re Kettering, 750 F.2d at 540; In re Paine, 14 B.R. 272, 275 (W.D.Mich.1981); In re B.E.T. Genetics, Inc., 35 B.R. 269 (Bankr.E.D.Cal.1983); In re Chou-Chen Chemicals, 31 B.R. 842 (Bankr.W.D.Ky.1983). Another ground for denial of fees is failure to comply with the disclosure requirements of the Code and Rules. In re Guy Apple Masonry Contractors, 45 B.R. 160, 168 (Bankr.D.Ariz.1984). One court has relaxed the absolute denial of fees rule in favor of a balancing between the. need for attorney discipline and the equities of the case. In re Watson Seafood and Poultry Co., 40 B.R. 436, 440 (Bankr.E.D.N.C.1984). Of course, upon reconsideration, the bankruptcy court may adhere to its conclusion that in this case there was no conflict of interest.

. The local rules of the district courts incorporate the ethical and disciplinary rules of the State of Texas, which bears special responsibility for maintaining standards among members of the bar. Ohralik v. Ohio State Bar Ass’n, 436 U.S. 447, 460, 98 S.Ct. 1912, 1920, 56 L.Ed.2d 444 (1977). Texas law provides that "a lawyer has always been regarded as an officer of the court. He is charged with obedience to the laws of this state and of the United States. An attorney is also charged with the responsibility to maintain due respect for the judicial system and its rules of law.” Muniz v. State of Texas, 575 S.W.2d 408, 411 (Tex.Civ.App. — Corpus Christi 1979, writ refd n.r.e.). Based on the attorney’s ethical responsibility to tell the truth as an officer of the court, we find no abuse of discretion in the bankruptcy court's reliance on the debt- or's attorneys' representations at the evidentiary hearing in addition to the written application to which Bankr.R.P. 9011 applies.