**In re Gerald Lee CODY, Marilyn Rose Cody dba GLC Architect, fdba C & H Enterprises, Ltd., Debtors in Possession.**

Bankruptcy No. 687–01509.

United States Bankruptcy Court, N.D. Ohio.

March 30, 1990.

John B. Wirtz, Phillip D. Schandel, Canton, Ohio, former counsel for debtors in possession.

Wylan W. Witte, Alliance, Ohio, for debtors in possession.

Dean Wyman, Staff Atty. Office of U.S. Trustee, Cleveland, Ohio.

## MEMORANDUM OF DECISION RE: COMPENSATION OF COUNSEL

### JAMES H. WILLIAMS, Chief Judge.

The court is asked to award compensation, pursuant to 11 U.S.C. § 330, to John B. Wirtz, former counsel for the debtors in possession. Mr. Wirtz initially applied for compensation on July 14, 1989. Although not specifically so stated, it is obvious that he was at that time seeking interim compensation pursuant to 11 U.S.C. § 331. The United States Trustee (UST) filed an objection and a hearing was duly scheduled and held on September 6, 1989, at which Mr. Wirtz was awarded $5,000.00 as interim compensation out of more than $11,-000.00 sought. The UST on September 11, 1989 filed a "Supplemental Statement" in which that office reiterated its opposition to what it calculated to be a request for $4,027.00 for pre-petition services and withdrew certain other objections it had raised at the hearing.

The present motion is styled an "Amended Application by Former Attorney for Debtor-(sic)-in-Possession for Allowance for Compensation and Disbursement" and seeks the allowance of $14,496.75, less "$2,000.00 [paid] when this case originally began and the sum of $5,000.00 as previously ordered by this Court for a total of $7,000.00." The movant also seeks the allowance of $210.00 in reimbursement of expenses advanced on behalf of the debtors in possession, although no detailed itemization of these expenses is provided.

The UST has met the current application with a motion to disgorge the $5,000.00 previously awarded by the court. (The motion was orally amended at the hearing to encompass the full $7,000.00 already paid to Mr. Wirtz.) The impetus for the UST's motion is a letter sent to the UST's office, with copies to the court and Mr. Wirtz, by the debtors in possession under date of October 4, 1989. They complained that the hourly rate asserted by Mr. Wirtz for his services was higher than had been agreed upon at the outset of the case and further stated:

2) Mr. Wirtz's law firm has owed me (sic) $3,779.07 since November, 1988 (see attached invoice) for architectural services for their new offices, which we have been unable to collect. We are asking the court to 1) request the firm of Boggins, Moore & Wirtz to pay us in full for the architectural fees still due; or 2) subtract this sum from the legal fees for which the court is being petitioned.

A hearing was convened on both the amended application for compensation and the motion to disgorge at which the court heard the statements of Mr. Wirtz and counsel for the UST and took the testimony of one of the debtors in possession, Gerald L. Cody, and Edgar M. Moore, Jr., an attorney in Canton with whom Mr. Wirtz shares office space.

The following will constitute this court's findings of fact and conclusions of law as required by Fed.R.Civ.P. 52, made applicable to these proceedings by Bankruptcy Rule 7052.

## FINDINGS OF FACT

1. This case commenced with the filing of a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code on October 14, 1987. The petition was signed by Phillip D. Schandel as attorney for the petitioners and, on the same date, the court entered an order appointing Mr. Schandel as counsel for the debtors in possession. No mention is made in the application for authority to employ Mr.

Schandel of any other attorney, firm or partnership of attorneys.

2. Messrs. Schandel and Wirtz were, on the date of the filing of the Chapter 11 petition, partners in the practice of law and occupied offices with Boggins, Centrone & Bixler, described by Mr. Wirtz at the hearing on his amended application for compensation as an "association of individual practitioners." That "association" eventually came to be known as Boggins, Moore & Wirtz. At no time has the "association" actually been a partnership.

3. According to Mr. Wirtz, he and Mr. Schandel terminated their own partnership on August 19, 1988.

4. Although there is some confusion in the testimony as to dates, Mr. Cody appears to agree, and the court therefore finds, that, as asserted by Mr. Moore, Mr. Cody, an architect, in late 1987 or early in 1988, orally contracted with attorney Moore and attorney Boggins to provide certain services in conjunction with the relocation of that entity known as either Boggins, Centrone & Bixler or Boggins, Moore & Wirtz to new space in the United Bank Building in Canton. Mr. Cody was then, and for some period of time prior thereto had been, a client of Mr. Wirtz.

5. The debtors in possession, on February 7, 1989, sent to the attention of Mr. Moore, a "Statement" which reflects a total of $3,779.07, including interest, due for "invoices outstanding" which invoices were allegedly issued on July 1, 1988 and November 1, 1988. According to Mr. Moore, the unpaid invoices, while admittedly received by the "association," are disputed by the attorneys for the reason that the work which Mr. Cody was responsible to oversee still is not complete.

6. According to Mr. Moore, invoices such as those issued by the debtors in possession would, when received by the "association," be approved and forwarded to the "association's" lessor for payment. (Apparently, such charges would be credited against a "tenant improvement allow-ance," negotiated as a part of the "association's" move to the new space.)

7. Mr. Wirtz filed an "Application for Substitution of Counsel" on May 3, 1988 "on the grounds that prior counsel has withdrawn ..." Accompanying the Application was Mr. Wirtz's Affidavit, which recites in pertinent part:

To the best of my knowledge I do not represent any interest adverse to the debtors or their estate ...

The court, by order entered May 30, 1989, ordered Mr. Wirtz substituted as counsel.

8. The detailed charges supporting Mr. Wirtz's amended application reflect 64.4 hours of time spent on behalf of the debtors in possession by Mr. Schandel at an hourly rate of $75.00 for a total of $4,826.25 during the period from September 27, 1987 through March 24, 1989. Mr. Wirtz's charges, which make up the balance of the total sought, commence on *September 26, 1986*, or more than a year prior to the filing of the Chapter 11 petition, and conclude on October 11, 1989.

## DISCUSSION

### 1.

While the amended application before the court is signed, presented and prosecuted by Mr. Wirtz, it clearly separates those services rendered by him from those performed by Mr. Schandel. Mr. Wirtz advised the court at the hearing that Mr. Schandel's services in this case were taken into account when the partnership between him and Mr. Wirtz was dissolved, and the court will treat the attorneys separately for the purposes of this decision.

█ The court will allow, in substantial part, compensation for services performed by Mr. Schandel on behalf of the debtors in possession. His appointment as counsel was promptly entered at the outset of the case and no argument has been made that such appointment runs counter in any way to the provisions of 11 U.S.C. § 327(a) and Bankruptcy Rule 2014(a).[1] Further, at the

---

1. Section 327(a) provides:

Except as otherwise provided in this section, the trustee, with the court's approval, may

time of Mr. Schandel's appointment as counsel for the debtors in possession, no employment arrangement was in existence between Mr. Cody and the "association" or any of its members and there is no evidence of Mr. Schandel's awareness of any conflict which subsequently arose.

■ The UST points to charges asserted by Mr. Schandel for what appear to be purely clerical functions, i.e., filing financial statements, and suggests their disallowance under the authority of *In re Wiedau's, Inc.*, 78 B.R. 904 (Bankr.S.D.Ill.1987) and this court's "Memorandum Regarding Allowance of Compensation," issued October 1, 1988. The court agrees and finds the time expended on these activities to total 1.5 hours, which, at Mr. Schandel's rate of $75.00 per hour for his services, amounts to a total of $112.50 which should be deducted from any award to him.

An allowance of $4,713.75 for services rendered by Mr. Schandel on behalf of the debtors in possession will be approved.

*2.*

■ Mr. Wirtz's first official appearance in the case came on May 3, 1989 with the filing of his "Application for Substitution of Counsel." Prior thereto he had been rendering services, for which he seeks compensation, beginning on September 26, 1986.

The pre-petition services, i.e., those rendered before October 14, 1987, are addressed first as there can be little serious doubt that they must be denied. Mr. Wirtz argues, of course, that certain moneys now available to assist in the funding of a plan

flowed from his work and hence, he has conferred a benefit upon the estate.

The Bankruptcy Code and the Rules are crystal clear and they are, with slight exception, prospective in their reach: "... the trustee [debtor in possession] *with the court's approval may* employ one or more attorneys ..." *See*, Section 327(a) (emphasis added) and "[a]n order approving the employment of attorneys ... *shall be made only on the application* of the trustee [debtor in possession] ..." *See*, Rule 2014(a) (emphasis added). "The overwhelming weight of authority seems to be to the effect that professional services performed for a bankruptcy estate are compensable out of the assets of the estate *only* if such professional assistance has been authorized by the court prior to the services being rendered." *Matter of Mansfield Tire & Rubber Company*, 65 B.R. 446, 465 (Bankr.N.D.Ohio 1986) (emphasis in the original; citations omitted). Circumstances may allow some reasonable allowance for pre-petition efforts as the court noted in *In re S.T.N., Enterprises Inc.*, 70 B.R. 823, 840 (Bankr.D.Vt.1987):

Under 11 U.S.C. § 329, the debtor's attorney may be compensated for the reasonable value of pre-petition legal services "rendered in contemplation of or in connection with the case." The purpose of this statutory restriction is to safeguard against the "serious potential for overreaching by the debtor's attorney." S.Rep. No. 989, 95th Congress, 2nd Session 39, reprinted in 1978 U.S.Code Cong. & Ad.News 5787, 5825. In order for services to be "in contemplation of" bankruptcy, the services must be influ-

employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the trustee in carrying out the trustee's duties under this title.

Rule 2014(a) reads:

*Application for and Order of Employment.* An order approving the employment of attorneys, accountants, appraisers, auctioneers, agents, or other professionals pursuant to § 327 or § 1103 of the Code shall be made only on application of the trustee or committee, stating the specific facts showing the ne-

cessity for the employment, the name of the person to be employed, the reasons for the selection, the professional services to be rendered, any proposed arrangement for compensation, and, to the best of the applicant's knowledge, all of the person's connections with the debtor, creditors, or any other party in interest, their respective attorneys and accountants. The application shall be accompanied by a verified statement of the person to be employed setting forth the person's connections with the debtor, creditors, or any other party in interest, their respective attorneys and accountants.

enced by and be a direct result of the debtor's imminent filing of a petition in bankruptcy. *In the Matter of Swartout,* 20 B.R. 102, 106 (Bkrtcy.S.D.Ohio, 1982). We agree with the Court in *In re Four Star Terminals, Inc.,* 42 B.R. 419, 434 (Bkrtcy.D.Ark.1984), that "as a matter of policy the pre-petition fees of the debtor's attorney should be limited to advising the client whether to file and to preparing the petition and the accompanying documents, absent a clear showing of exceptional circumstances."

As Mr. Wirtz recites in his amended application, he was originally employed as Mr. Cody's attorney in state court litigation entitled *American Equipment Leasing Co. v. Cody,* a Common Pleas Court case. The detailed analysis of Mr. Wirtz's services attached to the amended application recites activities, commencing as noted, on September 26, 1986, in connection with "American Equipment Leasing," "Highland Park," "Rex Pipe," "Johnstone Management," "Bausch & Lomb" and "Regional Transit Authority," all of which appear, except insofar as some of the matters may have been settled to Mr. Cody's financial benefit, to be extraneous to the bankruptcy process.

### *3.*

As noted in Finding of Fact No. 7 above, Mr. Wirtz's appearance in this case first became a matter of record on May 3, 1989 and it was not until May 30, 1989 that the court ordered his substitution as counsel of record for Mr. Schandel. It did so then on the strength of Mr. Wirtz's affidavit, presented in compliance with that portion of Bankruptcy Rule 2014(a) which provides:

> The application shall be accompanied by a verified statement of the person to be employed setting forth the person's connections with the debtor ...

On May 3, 1989, a debtor-creditor relationship existed between the group of lawyers with whom Mr. Wirtz was affiliated in the practice of law and the debtors in possession. It is true that the group of lawyers, acting through one of their number, Mr. Moore, disputed the right of the debtors in possession to be paid on the invoices they had rendered for work allegedly done for the group; it is true that Mr. Wirtz had attempted to distance himself from any of the negotiations and arrangements surrounding the employment of the debtors in possession to perform services for the lawyers group; and it is equally true that Mr. Wirtz had the responsibility, under Rule 2014(a), to "[set] forth [his] connections with the debtor ..." It appears that the Rule contemplates more than opining, as Mr. Wirtz has done here, that he represents no "interest adverse to the debtors or their estate ..." That conclusion may be drawn by the court after hearing from those entitled to notice of a proposed employment, in particular, the UST who is specifically denominated as a recipient of notice of proposed employment under Rule 2014, presumably to afford the opportunity for comment.

Surely, a "connection" that Rule 2014 contemplates being revealed is that a debtor one seeks to represent has performed or is performing services to the applicant. Mr. Wirtz may indeed have so well insulated himself from the controversy between Mr. Cody and the attorneys with whom Mr. Wirtz shares office space that he was unaware of the existence of any dispute. He could not, it seems to the court, have overlooked the fact that he had told Mr. Cody of the group's planned move to new space and that Mr. Cody did indeed perform services, especially when the testimony revealed that Mr. Wirtz, and the other attorneys, conferred with Mr. Cody to select the size and location of the offices they would occupy in their new quarters. Those quarters, it should be noted, are, according to the testimony of Mr. Moore, incomplete to this day. Mr. Moore, at least, is holding Mr. Cody partially responsible for that unhappy state of affairs, and has, at least since May of 1989, refused payment of the disputed invoices. One court has observed that "[i]t is the duty of the attorney to reveal *all connections.* Rule [2014] does not give the attorney the right to withhold certain information on the grounds that, in the attorney's opinion, the connection is of no consequence or is not adverse." *In re*

*Coastal Equities, Inc.,* 39 B.R. 304, 308 (Bankr.S.D.Calif.1984). (Emphasis added).

■ Regardless of Mr. Wirtz's state of mind when he filed his application to be substituted as counsel for the debtors in possession, he was, in the court's opinion, in a state of actual conflict with them. Noting Section 327(c)'s exception to the general rule of disinterestedness, the court in *In re Georgetown of Kettering, Ltd.,* 750 F.2d 536, 540 (6th Cir.1984), found an inherent conflict to exist and said:

> Section 327(c) does not abide such conflicting employment ...
>
> Because an *actual* conflict of interest existed, [the applying attorney's] application for compensation should have been denied.

The nature and impact of the conflict in which Mr. Wirtz found himself is easily demonstrated. Assuming no bankruptcy proceeding were in existence, what would Mr. Wirtz's options be if his client, Mr. Cody, came to him with his claim against Boggins, Moore & Wirtz, or some members of that "association" for litigation? He could hardly prosecute an action against what are, at the very least, his co-tenants. Moreover, it appears from the testimony that all members of this "association", including Mr. Wirtz, have a direct pecuniary interest in the outcome of their dispute with Mr. Cody, as each member will have to contribute his or her aliquot share of any recovery Mr. Cody may realize.[2]

■ Similarly, it is the duty of the debtors in possession to recover any and all accounts receivable which they may have outstanding as they are obvious assets of the estate. Could Mr. Wirtz, as their attorney, bring an action against Boggins, Moore & Wirtz on behalf of the debtors in possession?

■ Faced with a situation in which a professional person, at any time during employment pursuant to Section 327, is not disinterested or holds or represents an in-

terest adverse to the estate, the court may deny allowance of compensation for services and reimbursement of expenses. *See,* Section 328(c) and *In re Coastal Equities, Inc., supra.*

■ The court must next determine then, whether the harsh remedy of denial of any compensation must be invoked under the circumstances here present. For guidance, we need look no farther than our own circuit's pronouncement in *In re Georgetown of Kettering, Ltd.* quoted above. To the same effect is the very recent holding in *In re Florida Peach Corporation of America, International Division,* 110 B.R. 589 (Bankr.M.D.Fla.1990), which quoted from what it described as the "seminal" conflict of interest case, *Woods v. City National Bank & Trust,* 312 U.S. 262, 269, 61 S.Ct. 493, 497, 85 L.Ed. 820 (1941):

> Where an actual conflict of interest exists, no more need be shown in this case to support a denial of compensation.

The court in *In re 765 Associates,* 14 B.R. 449 (Bankr.D.Hawaii 1981) found a conflict of interest present, denied a request for compensation and ordered fees previously paid returned to the estate. In *In re Paine,* 14 B.R. 272 (D.C.W.D.Mich. 1981), the bankruptcy court had found that counsel for the debtor had a conflict of interest and denied compensation. Counsel appealed to the District Court which held that the bankruptcy judge was within his sound discretion in refusing to award the compensation sought.

Admittedly, in several of the cases cited above, particularly egregious conduct on the part of the applicants appears to have left the courts with no qualms about their decisions being overly harsh. Here, no specific intent on the part of Mr. Wirtz to mislead or in anyway deceive either the court or any party in interest in these proceedings has been shown. Nevertheless, an actual or inherent conflict has been dem-

---

**2.** Mr. Moore testified that to finish the alterations in the new space, the group was forced to borrow $35,000.00. Mr. Moore further indicated that it was only out of consideration for Mr. Wirtz that no action has been taken, thus far, to assert a counterclaim against Mr. Cody for that amount. Such a counterclaim, if successfully prosecuted, would result in a net recovery for "association" members including, presumably, Mr. Wirtz.

onstrated to the court's satisfaction, for the reasons stated. As also noted, the Sixth Circuit Court of Appeals appears to have spoken definitively under such circumstances. Practically, too, the court perceives no way in which it can find Mr. Wirtz in only a partially conflicting situation. It therefore follows that any compensation to him must be denied and, consequently, any sums already paid must be disgorged, with credit given for the allowance approved above for Mr. Schandel's efforts. With respect to Mr. Wirtz's application for the reimbursement of $210.00 in expenses which he claims to have advanced on behalf of the estate, the court would at least be tempted, as an equitable matter, to allow reimbursement therefor, as indeed was done in *In re Florida Peach Corporation of America, International Division, supra*, if it had any basis for such action. However, the only justification offered by Mr. Wirtz for such an allowance is the following language from paragraph 10 of his amended application:

> Further that expenses in the amount of $210.00 have been incurred over the period of time in handling the Chapter 11 Proceeding and are not shown in "Exhibit A" attached hereto. The numerous long distance telephone calls and postage for mailing all documents to necessary parties herein have not been kept track of by petitioner.

Such a recitation is not sufficient to support an award of reimbursement for expenses.

An order in conformance with these findings and conclusions will issue forthwith.