KRUPANSKY, Circuit Judge.
 

 This is an appeal from a decision by the United States District Court for the Southern District of Ohio which upheld the bankruptcy court’s award of $13,965.00 to the appellee Baggott Law Offices Co., L.P.A. (Baggott), for services rendered to the estate.
 

 There is no dispute as to the following relevant chronology. The underlying bankruptcy proceeding commenced March 4, 1981 with an involuntary Chapter 11 creditor’s petition in bankruptcy against Georgetown of Kettering, Inc. (Georgetown). The petition was filed by the Imperial Management Company (Imperial), through its attorney, Horace W. Baggott.
 

 Georgetown was a rental property owned by G.W.F. Investments Ltd. (G.W.F.), one of several partnerships formed by Frederick E. Gagel (Gagel), Steven Williams (Williams), and Garrett H. Frey (Frey) for the purpose of acquiring and operating rental properties. Gagel was also president of Imperial.
 

 G.W.F. was the sole general partner in four limited partnerships thus formed. Each of those partnerships had also been subjected to involuntary creditor’s petitions. A further involuntary bankruptcy petition was filed by Gagel against G.W.F. itself.
 

 Previous to the Gagel/Imperial involuntary bankruptcy petition against Georgetown, appellant Hunter Savings Association (Hunter Savings) had foreclosed various notes held against Georgetown and co-makers which totalled $5,150,000.00. These notes were secured by three mortgages against the apartment complex which formed Georgetown’s principal asset. When the Chapter 11 proceeding was instituted, the foreclosure action was removed to the bankruptcy court. On September 2, 1981, Hunter Savings was granted judgment on the notes.
 
 Hunter Savings Association v. Georgetown of Kettering, Ltd.,
 
 14 B.R. 72 (Bankr.S.D.Ohio 1981). Baggott appeared for Georgetown in that adversary proceeding,
 
 see
 
 14 B.R. at 73, in which the bankruptcy court stayed the judgment pending the resolution of the Chapter 11 proceedings. 14 B.R. at 81.
 

 Baggott has represented Gagel in each of the latter’s many roles in this exceedingly intricate litigation. Gagel filed the schedules on behalf of the debtor Georgetown listing himself as Georgetown’s largest unsecured creditor and his company, Imperial, as the second largest. Gagel’s personal and Imperial’s unsecured claims amounted to $907,000.00, which was in excess of 90% of all the scheduled unsecured claims. Both claims were ultimately disallowed.
 

 On March 10, 1981, in the G.W.F. bankruptcy matter (to which Hunter Savings was not a party) G.W.F.’s petition to employ Baggott as counsel was granted. At this point, Baggott represented Imperial (of which Gagel was president) and Gagel as unsecured creditors in the Georgetown bankruptcy. Also in the Georgetown bankruptcy, Baggott further represented Gagel as a partner in G.W.F;, which owned Georgetown. In the adversary proceeding on the foreclosed mortgage notes brought by Hunter Savings against Georgetown, Baggott represented Georgetown, the debt- or. In the separate G.W.F. Bankruptcy, Baggott represented Gagel as the creditor who initiated the bankruptcy. Baggott also represented Gagel as a partner in G.W.F., which owned Georgetown and, upon the March 10, 1981 order approving the petition, Baggott also represented the Debtor, G.W.F.
 
 [1]
 

 
 *538
 
 In the Georgetown case (from which this appeal proceeds), Gagel, Frey, and Hunter Savings proposed separate plans of reorganization. Gagel, through G.W.F., submitted two such plans. Ultimately, on January 25,1982, the Hunter Savings plan was approved (largely as a result of agreement between Frey
 
 [2]
 
 and Hunter Savings). The Hunter Savings plan released all co-makers of the Georgetown notes, including Gagel, Frey and the Williams estate, in return for title to the Georgetown real estate. “Non-insider” unsecured claims under $2,000.00 would receive 100% and those over $2,000.00 would receive $2,000.00 or 50% of their total claim, at the creditor’s option. Under the arrangement, Hunter Savings assumed the administrative expenses of the estate. Because Frey’s attorneys had withdrawn their claims for fees and expenses, the only anticipated administrative expense was the $766.13 fee of the attorney employed by a creditor’s committee.
 

 On March 5, 1982, some five weeks subsequent to the confirmation of the Hunter Savings plan, Baggott filed a petition for fees in the amount of $22,100.00 for its representation of the debtor in possession. On March 8, Baggott filed a motion for appointment as attorney for the debtor in possession to be entered
 
 nunc 'pro tunc
 
 to March 3, 1981. On March 15, 1982, without notice to Frey or Hunter, the bankruptcy court entered an order appointing Bag-gott as attorney for the debtor in possession
 
 nunc pro tunc
 
 to March 3, 1981.
 

 On March 16, 1982, Frey filed an objection to the Baggott appointment, which was followed, on June 18, 1982, by the objection of Hunter Savings. A hearing on the fee petition was conducted on June 22, 1982 and the parties were directed to file memoranda. Baggott did not file a timely memorandum, but Hunter Savings did. The bank joined Baggott’s failure to comply with 11 U.S.C. § 329(a),
 
 [3]
 
 Bankruptcy Rules 215 and 219,
 
 [4]
 
 and Interim Bankrupt
 
 *539
 
 cy Rule 2006,
 
 [5]
 
 as issues in conjunction with the appointment of Baggott and the application for attorney’s fees.
 

 On January 5, 1983, the bankruptcy court noted that Baggott had failed to comply with the applicable statutes and rules and
 
 sua sponte
 
 granted Baggott two weeks to conform. On January 24, 1983, Baggott filed a statement purporting to bring the application and appointment into compliance.
 

 On February 18, 1983, the bankruptcy court allowed Baggott’s application for fees (in reduced amount of $13,965.00) whereupon an appeal was taken to the district court. 28 B.R. 120. The district court affirmed and there followed this timely appeal.
 
 [6]
 
 34 B.R. 368.
 

 Hunter Savings has asserted that the award of fees to Baggott was improper because of inherent conflicts of interest in Baggott’s representation in this case, as well as the law firm’s failure to satisfy other requirements of the bankruptcy statute and rules. Section 329(a) requires the applicant attorney to file a statement of compensation paid or contracted for in connection with the case. 11 U.S.C. § 329(a). Under Bankruptcy Rule 219(b), the statement must be filed “on or before the first date set for the first meeting of creditors”.
 
 *540
 
 At the time Baggott’s
 
 nunc pro tunc
 
 order was granted, no § 329(a) statement had been filed.
 

 A more serious failure of compliance has been noted with respect to the conflict of interest provisions of 11 U.S.C. § 327.
 
 [7]
 
 Section 327(c) prohibits the attorney for the debtor from representing a creditor in the case (although by its terms the statute does not preclude representation of a creditor
 
 prior
 
 to appointment as counsel to debtor).
 
 See also
 
 Rule 215(c). As noted above, throughout the proceedings Baggott represented all of Gagel’s interests, including Gagel as the debtor in possession and as an unsecured creditor.
 

 The district and bankruptcy courts recognized that Baggott’s representations posed conflicts of interest problems, but held that
 
 Cle-Ware Industries, Inc. v. Sokolsky,
 
 493 F.2d 863 (6th Cir.1974), did not require disqualification.
 

 In
 
 Cle-Ware,
 
 this circuit was confronted with a local civil rule in the Northern District of Ohio which mandated separate attorneys for the debtor and debtor in possession. At the time, the Northern District of Ohio was the only jurisdiction with such a rule. The Sixth Circuit disapproved the rule stating that:
 

 This court strongly disapproves the practice of appointing separate counsel as attorney for the debtor-in-possession and at the same time compensating another attorney at the expense of the bankrupt estate in his capacity as counsel for the debtor for services rendered after the filing of a petition for a plan of arrangement. Hereafter we will not approve this procedure as a general practice in the Sixth Circuit. Only in exceptional circumstances, which we do not now foresee, will this procedure be allowed by this court. The debtor and the debtor-in-possession is one and the same person, although “wearing two hats.” We see no valid reason why, as a general rule, his legal representation in both capacities should not be limited to one attorney or one set of attorneys. In the ordinary situation, as in the instant case, there is no actual or potential conflict of interest requiring or justifying payment for services of separate attorneys.
 

 While the lower court in this case correctly identified the needless waste of time and expense as the rationale of the
 
 Cle-Ware
 
 holding, the district court overlooked a substantive distinction. Here Gagel, and hence his attorney, advanced the
 
 inherently
 
 conflicting interests of creditor and debt- or in possession. Section 327(c) does not abide such conflicting employment. The fact that Gagel’s creditor interest was subsequently disallowed does not serve to obviate the conflict, as suggested by the district court, but rather enhances the conflict.
 
 See
 
 Advisory Note to Rule 215(c) (“if there is a question as to the validity or amount of a general creditor’s claim, his attorney would be subject to a disqualifying interest”).
 

 Because an
 
 actual
 
 conflict of interest existed, Baggott’s application for compensation should have been denied.
 
 See Woods v. City National Bank & Trust,
 
 312 U.S. 262, 269, 61 S.Ct. 493, 497, 85 L.Ed. 820 (1941):
 

 [T]he incidence of a particular conflict of interest can seldom be measured with any degree of certainty. The bankruptcy court need not speculate as to whether the result of the conflict was to delay action where speed was essential, to close the record of past transactions
 
 *541
 
 where publicity and investigation were needed, to compromise claims by inattention where vigilant assertion was necessary, or otherwise to dilute the undivided loyalty owed to those whom the claimant purported to represent. Where an actual conflict of interest exists, no more need be shown in this type of case to support a denial of compensation.
 

 Accordingly, even had Baggott been able to sustain its burden to demonstrate the propriety of the
 
 nunc -pro tunc
 
 appointment, an issue on which this court expresses no conclusion, the compensation would be denied as a result of the conflict of interest. Consistent with this analysis, the district court award of fees from the estate is reversed.
 

 [1]
 

 . Baggott clients:
 

 In re Georgetown, Debtor
 

 Imperial (Gagel, President) — unsecured creditor Gagel personally — unsecured creditor
 

 G.W.F. (Gagel partnership) — a partial owner of Georgetown
 

 Georgetown — debtor
 

 In re G.W.F., Debtor
 

 Gagel personally — petitioning creditor
 

 G.W.F. (Gagel partnership) — debtor
 

 
 *538
 
 Gagel — a partial owner of G.W.F.
 

 [2]
 

 . The third partner in G.W.F., Williams, had since died and his estate had assigned its interests to Frey.
 

 [3]
 

 . 11 U.S.C. § 329(a) provides as follows:
 

 § 329. Debtor’s transactions with attorneys
 

 (a) Any attorney representing a debtor in a case under this title, or in connection with such a case, whether or not such attorney applies for compensation under this title, shall file with the court a statement of the compensation paid or agreed to be paid, if such payment or agreement was made after one year before the date of the filing of the petition, for services rendered or to be rendered in contemplation of and in connection with the case by such attorney, and the source of such compensation.
 

 As relevant to this appeal, the official note to this section states:
 

 Payments to a debtor's attorney provide serious potential for evasion of creditor protection provisions of the bankruptcy laws, and serious potential for overreaching by the debt- or's attorney, and should be subject to careful scrutiny.
 

 [4]
 

 . Rule 215 relevantly provides as follows:
 

 (a) Conditions of Employment of Attorneys and Accountants. No attorney or accountant for the trustee or receiver shall be employed except upon order of the court. The order shall be made only upon application of the trustee or receiver, stating the specific facts showing the necessity for such employment, the name of the attorney or accountant, the reasons for his selection, the professional services he is to render, and to the best of the applicant’s knowledge all of the attorney’s or accountant’s connections with the bankrupt, the creditors or any other party in interest, and their respective attorneys and accountants. If the attorney or accountant represents or holds no interest adverse to the estate in the matters upon which he is to be engaged, and his employment is in the best interest of the estate, the court may authorize his employment. Notwithstanding the foregoing sentence, the court may authorize the employment of an attorney or accountant who has been employed by the bankrupt when such employment is in the best interest of the estate. The employment of any attorney or accountant shall be only for the purposes specified in the order, but the court may authorize a general retainer of an attorney when necessity therefor is shown.
 

 (b) Employment of an Attorney or Accountant with Adverse Interest. If without disclosure any attorney or accountant employed by the trustee or receiver shall represent or hold, or shall have represented or held, any interest adverse to the estate in any matter upon which he is so employed, the court may deny the allowance of any compensation to such attorney or accountant, or the reimbursement of his expenses, or both, and may also deny any allowance to the trustee or receiver if it
 
 *539
 
 shall appear that he failed to make diligent inquiry into the connections of such attorney or accountant.
 

 (c) Employment by a General Creditor. An attorney or accountant shall not be disqualified to act as attorney or accountant for the trustee or receiver merely because of his employment by a general creditor in the case. Particular attention is directed to the following Advisory Committee note to this rule:
 

 The rule recognizes that the holding as well as the representation of an interest adverse to the estate may have a disqualifying effect on an attorney or accountant and should therefore be disclosed to the court
 
 before
 
 his employment is authorized.
 

 (Emphasis added)..
 

 The pertinent portions of Bankruptcy Rule 219 state:
 

 (a) Application for Compensation or Reimbursement. A person seeking compensation for services ... from the estate shall file with the court an application setting forth a detailed statement of (1) the services rendered and expenses incurred, and (2) the amounts requested. An application for compensation shall include a statement by the applicant as to what payments have theretofore been made or promised to him for services rendered or to be rendered in any capacity whatsoever in connection with the case, the source of the compensation so paid or promised, whether any compensation he has previously received has been shared and whether an agreement or understanding exists between the applicant and any other person for the sharing of compensation received or to be received for services rendered in or in connection with the case, and the particulars of any such sharing of compensation or agreement or understanding therefor, except that the details of any agreement by the applicant for the sharing of his compensation as a member or regular associate of a firm of lawyers or accountants shall not be required. The requirements of this subdivision shall apply to an application for compensation for services rendered by an attorney or accountant even though the application is filed by a creditor or other person on his behalf.
 

 (b) Disclosure of Compensation Paid or Promised to Attorney for Bankrupt. Every attorney for a bankrupt, whether or not he applies for compensation, shall file with the court on or before the first date set for the first meeting of creditors, or at such other time as the court may direct, a statement setting forth the compensation paid or promised him for the services rendered or to be rendered in connection with the case, the source of the compensation so paid or promised, and whether the attorney has shared or agreed to share such compensation with any other person. The statement shall include the particulars of any such sharing or agreement to share by the attorney, but the details of any agreement for the sharing of his compensation with a member or regular associate of his law firm shall not be required.
 

 [5]
 

 . Interim Rule 2006, now Bankruptcy Rule 2014, provides thus:
 

 An order approving the employment of attorneys ... shall be made only on application of the trustee or committee, stating the specific facts showing the necessity for such employment, the name of the person to be employed, the reasons for his selection, the professional services to be rendered, and to the best of the applicant’s knowledge all of such person’s connections with the debtor, the creditors, or any other party in interest, and their respective attorney’s and accountants.
 

 [6]
 

 . The parties have joined the authority of a bankruptcy court to issue a
 
 nunc pro tunc
 
 appointment of counsel as an issue in this appeal. As will be seen, the within disposition does not require the court to address that issue.
 

 [7]
 

 . Section 327 provides in pertinent part as follows:
 

 § 327. Employment of professional persons
 

 (a) Except as otherwise provided in this section, the trustee, with the court’s approval, may employ one or more attorneys ... that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the trustee in carrying out the trustee’s duties under this title.
 

 ******
 

 (c) In a case under chapter 7 or 11 of this title, a person is not disqualified for employment under this section solely because of such person’s employment by or representation of a creditor, but may not,
 
 while employed by the trustee,
 
 represent, in connection with the case, a creditor.
 

 (Emphasis supplied). This section also applies to debtors in possession.
 
 See
 
 11 U.S.C. § 1107.