In re UNITCAST, INC. fka William Cook North America Unitcast, Inc., Debtor.

Bankruptcy No. 93–31383.

United States Bankruptcy Court, N.D. Ohio.

July 1, 1997.

E. James Hopple, Columbus, OH, for debtor.

Amy B. Leizman, Staff Attorney, U.S. Trustee Office, Cleveland, OH.

Thomas J. Schank, Toledo, OH, for Unsecured Creditors' Committee.

Local 48 (UAW), Joan Torzewski, Michael Jones, Toledo, OH.

Ralph J. Lewis, Assistant U.S. Attorney, U.S. Attorney's Office, Toledo, OH.

Bruce C. French, Lima, OH, Trustee.

Katherine Raup O'Connell, John Stockwell, Toledo, OH, for Findley Davies & Co.

Yvonne Tertel Pollex, Assistant Ohio Attorney General, Toledo, OH.

James F. Dettinger, Toledo, OH, for Industrial Scrap, Inc.

Tybo Alan Wilhelms, David M. McCarty, Toledo, OH.

Rosemary L. Phillips, Washington, DC, for Pension Benefit Guaranty Corp.

Henry J. Riordan, Trial Attorney, Tax Division, U.S. Dept. of Justice, Washington, DC.

Grady L. Pettigrew, Jr., Carla I. Struble, Columbus, OH.

Diane W. French, Lima, OH.

Donnita Carroll, Columbus, OH, for Ohio Bur. of Employ. Serv.

Fred Yellon, Chief, Special Procedures, I.R.S., Cleveland, OH.

Gary R. Taylor, Toledo, OH, for City of Toledo.

Mary Ann Whipple, Toledo, OH, for Schottenstein, Zox & Dunn.

H. Buswell Roberts, Jr., Toledo, OH, for Midwest Environmental Consultants and B.R. Holdings, Inc.

Howard B. Hershman, Toledo, OH, for W.E. Lott, Rick Olt and William Eachus.

Richard A. Scheich, Toledo, OH, for Fisher Acquistion & Development Corporation.

## MEMORANDUM OPINION AND DECISION

RICHARD L. SPEER, Chief Judge.

This cause comes before the Court after Hearing on William N. Eachus's First Application of Compensation and Reimbursement of Expenses of Consultant for Debtor–in–Possession, and the Objections filed by the United States Trustee and the Unsecured Creditors' Committee. This Court has reviewed the arguments of counsel, exhibits, and the entire record in the case. Based upon that review, and for the following reasons, the Court finds that applicant shall be allowed fees and expenses in accordance with this Opinion, and that the excess of monies paid over the allowed amount of fees and expenses shall be returned to the bankruptcy estate.

### FACTS

The following can be surmised from the deposition testimony and answers to interrogatories of William N. Eachus. The Debtor in this case, Unitcast, Inc., was a manufacturer of cast steel products for use in a number of industries, such as frames for railway cars. As of November of 1992, it was owned by a corporation owned by William Cook, PLC, which was the largest manufacturer of steel castings in Europe. About this time, Unitcast was having financial difficulties, and Unitcast management expressed interest in purchasing the foundry. Also at this time, Unitcast did business with William Lott, who was a broker of products of the type Unitcast produced. Mr. Lott became aware of Unitcast's financial difficulties and management's interest in purchasing the company, and introduced the management to Mr. Eachus. Mr. Eachus had worked with Mr. Lott in a previous bankruptcy case involving a steel foundry. Unitcast then hired Mr. Eachus to negotiate a deal for management's purchase of the foundry. In December of 1992, Unitcast was purchased for Ten Dollars ($10.00) and the assumption of liabilities by a corporation whose only shareholders were three members of the management of Unitcast.

According to the Third Amended Disclosure Statement, at the time of the purchase Unitcast was suffering substantial losses due to such factors as high employment costs under the existing collective bargaining agreement, an underfunded pension plan, ongoing liability for its employee and retirement coverage, a landfill Site that needed to be closed, and increasing numbers of creditor suits. Further, the machinery used at the foundry was outdated and in need of repair. On May 3, 1993, Unitcast filed for Chapter II bankruptcy protection. Mr. Eachus states that he recommended this option.

On August 26, 1993, an Application for Appointment of Business and Financial Consultant for the Debtor–in–Possession was filed on behalf of Mr. Eachus. In the Application the Debtor requested to employ Mr. Eachus due to his extensive experience in the structuring of specialized financing for distressed businesses, and that specifically Mr. Eachus had successfully structured a financing plan for Mountain State Steel Castings upon request of the United States Bankruptcy Court in Charleston, West Virginia. The Application also stated that Mr. Eachus was familiar with the Debtor's business, having obtained financing for Debtor through Mr. Lott, the Debtor's major secured lender and largest creditor prior to the petition date. The Application further stated that the employment of Mr. Eachus was necessary so that he may continue to advise the Debtor with regard to "various business decisions and financing options and to assist Debtor in structuring specialized financing to emerge from Chapter 11, including negotiations with the UAW."

The Application incorporated by reference an affidavit of Mr. Eachus. In this affidavit, Mr. Eachus stated that he had no past or

present relationship to the Debtor or any insiders or affiliates of the Debtor, except that he assisted in the acquisition of Debtor from William Cook PLC in 1992 and advised Debtor prior to the date of the filing of the Chapter 11 petition. He also stated that he had no past or present relationship with any creditor, though, "from time to time in the process of serving his various clients, he may have represented one or more creditors of the Debtor in unrelated matters."

An Agreed Order Approving Application for Appointment of Business and Financial Consultant for the Debtor–in–Possession was entered on September 27, 1993. It reflects an issue raised by the Unsecured Creditor's Committee that there may be a relationship between Mr. Eachus and Mr. Lott which could render Mr. Eachus an inappropriate party to be appointed as a financial consultant. In pertinent part, the Order stated that the parties hereby agree that:

> Eachus has had a business connection with Lott which consisted of Eachus securing Lott's investment as part of the financing successfully structured by Eachus for Mountain State Steel Castings at the request of the United States Bankruptcy Court in Charleston, West Virginia.

The Agreed Order concluded that the Application was appropriate and adequate under the circumstances, that no objection had been filed, and that Application was granted. Because it was contemplated that the Unitcast matter would consume a significant portion of his time, it further ordered that Mr. Eachus was to be paid eighty-five percent (85%) of his fees and one hundred percent of his expenses (100%) on a monthly basis. He was to notify the Debtor, the United States Trustee, and the Unsecured Creditor's Committee each month of the amount billed and the substance of the services, and "shall further file fee applications for review and approval by the Court with notice to all creditors as provided in 11 U.S.C. 331." Finally, the Order explicitly states that all fees paid shall be subject to possible disgorgement upon order of the Court.

Unitcast operated as a debtor-in-possession until May 15, 1995, when a Chapter 11 Trustee was appointed. During this time Mr. Eachus did extensive work for the Debtor on a wide range of issues, including obtaining a secured loan guaranteed by the City of Toledo which totaled Two Hundred Thousand Dollars ($200,000.00), arranging for the "outsourcing" of product from India and Canada (having the product made in India and Canada rather than at the foundry in Toledo), and negotiating with the union.

Prior to the time of the appointment of the Chapter 11 Trustee, extensive negotiations had resulted in a Disclosure Statement and Plan whereby it was contemplated that the assets of Unitcast would be purchased by a corporation to be formed and owned by Mr. Lott.[1] Even before the bankruptcy, Mr. Lott was the largest creditor, holding secured claims totaling Six Hundred and Fifty Thousand Dollars ($650,000.00) in principal amount. During the bankruptcy, he incurred compensable attorney's fees, and his secured position grew to what was considered to be approximately Seven Hundred and Fifty Thousand Dollars ($750,000.00) at the time the business was sold.

At a Hearing on the Third Amended Disclosure Statement on March 22, 1995, the Court inquired about a Mutual Release entered into between the Debtor and William Cook, PLC, which was disclosed in the Disclosure Statement but had not been approved by the Court. This precipitated a Rule 2004

---

1. Though the "purchase price" under the terms of the Third Amended Plan of Reorganization was ostensibly around Five Million Dollars ($5,000,000.00), the actual cash infusion would have been much less, especially considering that much of the initial payment would go to pay Mr. Lott's own secured claim. Indeed, the unsecured creditors would receive only five percent of their claims, or approximately Two Hundred Fourteen Thousand Dollars ($214,000.00). The Plan stated that the estimated market value of the assets was Four Million Six Hundred Forty-eight Thousand Four Hundred Forty-nine Dollars ($4,648,449.00), and the estimated liquidation value of the assets was Two Million Four Hundred Fifty-three Thousand Two Hundred Seventy-five Dollars ($2,453,275.00). However, the business ultimately sold for only Eight Hundred and Fifty Thousand Dollars ($850,000.00), which can partially be attributed to environmental problems at the foundry site which were found as the result of due diligence performed by the ultimate purchaser, who was not Mr. Lott.

examination of the president of the Debtor, and Mr. Eachus. Events discovered in the Rule 2004 examination in turn precipitated a Motion by the United States Trustee for the Appointment of a Chapter 11 Trustee.

Shortly after the appointment of the Chapter 11 Trustee, another potential purchaser of the Debtor became known. A Hearing was scheduled so that Unitcast could be auctioned to the highest bidder. At the beginning of the Hearing, Mr. Lott appeared prepared to bid, but at the Hearing Mr. Lott learned of environmental problems at the foundry, and he declined to make any bid. The business was then sold for Eight Hundred and Fifty Thousand Dollars ($850,-000.00) to the other purchaser. The Toledo foundry was not purchased, however, apparently due to environmental problems with the real estate. The foundry was subsequently sold for Five Thousand Dollars ($5,000.00) to yet another purchaser for non-foundry purposes.

On May 8, 1995, Mr. Eachus filed his "First Application of Compensation and Reimbursement of Expenses of Consultant for Debtor-in-Possession." In it he asks for Court approval of Two Hundred Sixty-six Thousand Eight Hundred Forty-three and 47/100 Dollars ($266,843.47) in fees and Forty-five Thousand Two Hundred Ninety-six and 27/100 Dollars ($45,296.27) in expenses, of which he has already received One Hundred Seventy-nine Thousand Two Hundred Sixty-four and 90/100 Dollars ($179,264.90) in fees and all of the expenses. Mr. Eachus claims to have billed Three Thousand Fifty-four and 25/100 (3,054.25) hours at the hourly rate of Seventy-five Dollars ($75.00) per hour, plus another Eight Hundred Forty-two (842) hours of travel time at half the hourly rate. Much of the travel time was incurred driving between the Unitcast facilities in Toledo, Ohio, and his home near Columbus, Ohio.

It appears that during the time that Unitcast was operated as a debtor-in-possession, there were only a handful of people comprising the management of the company. The president appears to have had a background in the marketing end of the business, and the Chief Financial Officer resigned in October of 1993. Mr. Eachus appears to have filled the gap by performing numerous functions, arranging contracts with outside suppliers, and negotiating with the union as well as other financial and governmental entities. Mr. Eachus has no explanation, however, as to why he did not file a fee application for approximately two and a half years, other than to say he did not know of his obligation to do so more timely. However, Mr. Eachus is a licensed and practicing attorney. Indeed, Mr. Eachus requested a continuance of the Hearing date first set on the present fee application because he was to be involved as attorney in a lengthy criminal death penalty case. Further, as mentioned previously, the experience for which he was hired in this case came from his work in another bankruptcy case.

Before the Continued Hearing on Mr. Eachus's fee application, the United States Trustee submitted Mr. Eachus's answers to the interrogatories propounded by the United States Trustee, wherein Mr. Eachus revealed that, "at the end of August, 1994, I began doing some legal representation for W.E. Lott Company and members of the extended family of William Lott. This representation had nothing to do with Unitcast matter and started about the time the debtor's plan was published and was expected to be approved." At the Hearing, Mr. Eachus invoked the attorney-client privilege regarding his representation of Mr. Lott. The Court directed him to seek permission to discuss the subject matter of his representation, and on December 11, 1995, an Affidavit of William Eachus in Support of his Fee Application was filed. In pertinent part, it states that:

> I agreed to represent William Lott in August of 1994 with regard to the transactions involving Unitcast of Canada, the object of which was to ensure the continued flow of product from Unitcast of Canada by arranging for payment directly from Mr. Lott. Unitcast of Toledo benefitted from this transaction by receiving the profit on the sales of these goods to its ultimate customers. Mr. Lott benefitted from the transaction by receiving a discount from Unitcast of Canada for payment on

delivery. Unitcast of Toledo was thus able to maintain deliveries on its orders for the parts made by Unitcast of Canada and receive its contractual profit from the sales to its customers without any cost, fee, or reduction in its profit schedule. I agreed to accept this employment because it was necessary for the continued operation of the debtor Unitcast of Toledo and appeared to be in the debtor's interest for Mr. Lott to bear the cost of the transaction. I received $20,000.00 on November 17, 1994; $5,246.53 on December 22, 1994; and $17,042.54 on April 27, 1995. After reviewing my records and consulting with Mr. Lott, it appears to me that this transaction was related to the operations of the debtor although at the time I answered the interrogatories of the United States Trustee, I believed otherwise. Now that I have the consent of Mr. Lott to make this disclosure, I believe the facts of the transaction speak for themselves.

In addition to the Unitcast of Canada transaction, I have accepted employment and performed services for Billy Lott, Robert Lott, and W.E. Lott Company as follows:

A. I handled a traffic matter for Robert Lott

B. I have done some estate planning for Billy Lott;

C. I have reviewed the corporate minutes for W.E.Lott Company.

All services discussed in this paragraph were rendered for the indicated party in May of 1995 or thereafter at no additional compensation.

The United States Trustee and the Unsecured Creditor's Committee have objected to Mr. Eachus's fee application, which is the subject of this Opinion.

## LAW

The Bankruptcy Code, 11 U.S.C. § 101 et seq., provides in pertinent part:

**11 U.S.C. § 327. Employment of professional persons**

(a) Except as otherwise provided in this section, the trustee, with the court's approval, may employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the trustee in carrying out the trustee's duties under this title.

(c) In a case under chapter 7, 12, or 11 of this title, a person is not disqualified for employment under this section solely because of such person's employment by or representation of a creditor, unless there if objection by another creditor or the United States trustee, in which case the court shall disapprove such employment if there is an actual conflict of interest.

**11 U.S.C. § 328. Limitation on compensation of professional persons**

(c) Except as provided in section 327(c), 327(e), or 1107(b) of this title, the court may deny allowance of compensation for services and reimbursement of expenses of a professional person employed under section 327 or 1103 of this title if, at any time during such professional person's employment under section 327 or 1103 of this title, such professional person is not a disinterested person, or represents or holds an interest adverse to the interest of the estate with respect to the matter on which such professional person is employed.

**11 U.S.C. § 329. Debtor's transactions with attorneys**

(a) Any attorney representing a debtor in a case under this title, or in connection with such a case, whether or not such attorney applies for compensation under this title, shall file with the court a statement of the compensation paid or agreed to be paid, if such payment or agreement was made after one year before the date of the filling of the petition, for services rendered or to be rendered in contemplation of or in connection with the case by such attorney, and the source of such compensation.

**11 U.S.C. § 330. Compensation of officers**

(a) After notice to any parties in interest and to the United States trustee and a hearing, and subject to section 326, 328, and 329 of this title, the court may award

to a trustee, to an examiner, to a professional person employed under section 327 or 1103 of this title, or to the debtor's attorney—

(1) reasonable compensation for actual, necessary services rendered by such trustee, examiner, professional person, or attorney, as the case may be, and by any paraprofessional persons employed by such trustee, professional person, or attorney, as the case may be, based on the nature, the extent, and the value of such services, and the cost of comparable services other that in a case under this title; and

(2) reimbursement for actual, necessary expenses.

The Bankruptcy Reform Act of 1994 rewrote this section as follows:

**11 U.S.C. § 330. Compensation of officers**

(a)(1) After notice to the parties in interest and the United States Trustee and a hearing, and subject to sections 326, 328, and 329, the court may award to a trustee, an examiner, a professional person employed under section 327 or 1103—

(A) reasonable compensation for actual, necessary services rendered by the trustee, examiner, professional person, or attorney and by any paraprofessional person employed by such person; and

(B) reimbursement for actual, necessary expenses.

(2) The court may, on its own motion or on the motion of the United States Trustee, the United Stated Trustee for the District or Region, the trustee for the estate, or any other party in interest, award compensation that is less than the amount of compensation that is requested.

(3)(A) In determining the amount of reasonable compensation to be awarded, the court shall consider the nature, the extent, and the value of such services, taking into account all relevant factors, including—

(A)(sic) the time spent on such services;

(B) the rates charged for such services;

(C) whether the services were necessary to the administration of, or beneficial at the time at which the service was ren-

dered toward the completion of, a case under this title;

(D) whether the services were performed within a reasonable time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed; and

(E) whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other that cases under this title.

(4)(A) Except as provided in subsection (b), the court shall not allow compensation for—

(i) unnecessary duplication of services; or

(ii) services that were not—

(I) reasonably likely to benefit the debtor's estate; or

(II) necessary to the administration of the case.

(B) In a chapter 12 or chapter 13 case in which the debtor is an individual, the court may allow reasonable compensation to the debtor's attorney for representing the interest of the debtor in connection with the bankruptcy case based on a consideration of the benefit and necessity of such services to the debtor and the other factors set forth in this section.

(5) The court shall reduce the amount of compensation awarded under this section by the amount of any interim compensation awarded under section 331, and, of the amount of such interim compensation exceeds the amount of compensation awarded under this section, may order the return of the excess to the estate.

(6) Any compensation awarded for the preparation of a fee application shall be based on the level and skill reasonably required to prepare the application.

**11 U.S.C. § 331. Interim Compensation**

A trustee, an examiner, a debtor's attorney, or any professional person employed under section 327 or 1103 of this title may apply to the court not more than once every 120 days after an order for relief in a case under this title, or more often if the court permits, for such compensation for

services rendered before the date of such an application or reimbursement for expenses incurred before such date as is provided under section 330 of this title. After notice and hearing, the court may allow and disburse to such applicant such compensation or reimbursement.

## DISCUSSION

Determinations concerning the administration of the debtor estate, the allowance or disallowance of claims against the estate, and orders to turn over property of the estate are core proceedings pursuant to 28 U.S.C. § 157. Thus, this case is a core proceeding.

The United States Trustee (hereafter "UST") has filed the present Objection to the fee application of Mr. Eachus. The Objection is also supported by the Unsecured Creditor's Committee. The UST urges that Mr. Eachus's fee application be denied or reduced for a number of reasons. These reasons include the alleged failure to fully disclose his prepetition relationship with Mr. Lott, the alleged failure to fully disclose his prepetition relationship with the Debtor, the assumption of duties beyond the scope of his employment so as to become non-disinterested, the work performed did not benefit the estate, excessive fees, and failure to follow the fee guidelines established by the Court. In a Supplemental Objection, the UST also argues that Mr. Eachus had a post-petition conflict of interest by representing Mr. Lott during his employment by the Debtor.

■ Upon a review of the record, this Court reluctantly finds insufficient merit in the UST arguments concerning the disclosure of prepetition activities of Mr. Eachus. The Agreed Order states that Mr. Eachus had a business connection with Mr. Lott which consisted of Mr. Eachus securing Mr. Lott's investment in the Mountain State Steel Castings case. The only evidence of a more significant involvement with Mr. Lott was Mr. Eachus' answer during the Rule 2004 examination to the question of how many times had he worked for Mr. Lott, in which he replied, "Well, its like an ongoing thing. We started, geez, back in 1985. I owned a foundry in West Virginia and that very simply is how we became acquainted."

No further questions were asked regarding this relationship. Though such an answer should serve as a basis for further investigation, this Court finds it lacking to show a prepetition relationship of a different character than that described in the Agreed Order.

Of the other allegations, this Court finds that there are three areas of concern: (1) Mr. Eachus's postpetition representation of Mr. Lott, (2) Mr. Eachus's failure to disclose his postpetition representation of Mr. Lott, and (3) the reasonableness of the fees requested, especially considering the tardiness of the request. Each will be addressed in turn.

Regarding conflicts of interest by professionals in employed in a bankruptcy case, it has been held that:

> The Bankruptcy Code imposes particularly rigorous conflict-of-interest restraints upon the employment of professionals persons in a bankruptcy case.

> \*　　\*　　\*　　\*　　\*　　\*

> Moreover, as the bankruptcy court is invested with ample power to deter inappropriate influences upon the undivided loyalty of court-appointed professionals through their tenure, the need for professional self-scrutiny and avoidance of conflicts of interest does not end upon appointment. The court 'may deny allowance of compensation ... if, at any time during such ... employment ..., such professional person is not a disinterested person, or represents or holds an interest adverse to the estate ...' Bankruptcy Code § 328(c), 11 U.S.C. § 328(c) (emphasis added). Thus, section 328(c) authorizes a 'penalty' for failure to avoid a disqualifying conflict of interest. See S.Rep. No. 9 89, 95th Cong., 2d Sess. 39 (1978) U.S.Code Cong. & Admin.News 1978, pp. 5787, 5825.

*Rome v. Braunstein,* 19 F.3d 54, 58 (1st Cir.1994).

However, § 328(c) contains the proviso, "Except as provided in section 327(c) ..." Section 327(c) provides that a professional will not be disqualified from employment by a trustee or debtor-in-possession per § 327 solely because such professional is employed

by or represents a creditor, unless there is an objection by another creditor or the United States Trustee, and then the Court must disapprove the professional's employment if there is an "actual conflict of interest." However, the Sixth Circuit has held that when an actual conflict of interest is present, it is an abuse of discretion to allow any compensation. *In re Georgetown of Kettering, Ltd.,* 750 F.2d 536 (6th Cir.1984).

In *Georgetown,* the counsel for the debtor also represented its president personally as an unsecured creditor, as well various related entities who were also creditors. The Court of Appeals explained:

> Here [the president], and hence his attorney, advances the *inherently* conflicting interests of creditor and debtor in possession. Section 327(c) does not abide such conflicting employment. The fact that [the president's] creditor interest was subsequently disallowed does not serve to obliviate the conflict, as suggested by the district court, but rather enhances the conflict.

> \* \* \* \* \* \*

Because an *actual* conflict of interest existed, [the professional's] application for compensation should have been denied. *See Woods v. City National Bank & Trust,* 312 U.S. 262, 269, 61 S.Ct. 493, 497, 85 L.Ed. 820 (1941):

> [T]he incidence of a particular conflict of interest can seldom be measured with any degree of certainty. The bankruptcy court need not speculate as to whether the result of the conflict was to delay action where speed was essential, to close the record of past transactions where publicity and investigation were needed, to compromise claims by inattention where vigilant assertion was necessary, or otherwise to dilute the undi-

vided loyalty owed to those whom the claimant purported to represent. Where an actual conflict of interest exists, no more need be shown in this type of case to support denial of compensation.

*Georgetown,* 750 F.2d at 540–541.

In *Georgetown,* the counsel for the debtor also represented its president personally as an unsecured creditor, as well as various related entities who were also creditors of the debtor. The Sixth Circuit found the interest represented by counsel to be inherently conflicting and impermissible under § 327(c). 750 F.2d at 540. The Court further found that since and actual conflict existed the lower courts erred in allowing any compensation. *Id.*[2] See also *In re Cody,* 122 B.R. 520, 526–527 (Bankr.N.D.Ohio 1990) (Even though there was no specific intent to mislead either the court or any party in interest, an actual or inherent conflict caused the entire compensation to be denied under Sixth Circuit precedent.)

 In the present case an actual conflict of interest is present in two ways. First, Mr. Lott was the major secured creditor in this Chapter 11 case who was actively and personally involved in the bankruptcy. Though there was no objection to the validity of Mr. Lott's claim, there is inherently a conflict in such a situation. A similar conflict was presented to the Court in *American Printers and Lithographers, Inc.,* 148 B.R. 862 (Bankr.N.D.Ill.1992). In that case, the Chapter 11 debtor sought to have attorneys employed who worked for a firm that had a continuing relationship, unrelated to the bankruptcy case, with a bank which was a major secured creditor of the debtor. The Court noted that § 327(c) only allows dual representation when there is no actual conflict, such as a trade debt incurred in the

---

**2.** Section 327(c) has been amended since the version applicable in *Georgetown.* At that time, it provided that a professional would not be disqualified for having represented a creditor in the past, but it also expressly provided that a professional "may not, while employed by the trustee [or debtor in possession], represent, in connection with the case, a creditor." Section 327(c) has subsequently been modified by Congress to its present version. Congress's goal was

to provide, "greater flexibility for the trustee in hiring a professional person ... [but][w]here there is an actual conflict of interest the trustee may not employ a party who represents a creditor in the case." S. Rep. No. 65, 98th Cong., 1st Sess. 75 (1983) (Senate Report accompanying S. 445, Omnibus Bankruptcy Improvements Act of 1983, which was the forerunner to the Bankr. Amend. Act of 1984).

ordinary. course of business, and as to which there is no dispute. *Id.* at 865, quoting *In re Amdura Corp.,* 121 B.R. 862, 867 (Bankr. D.Col.1990). The Court denied the application, explaining:

> In this case, Debtor and [the bank] have conflicting interests. Debtor's counsel must at least vigorously negotiate with [the bank] in order to fulfill its duties to Debtor, even if litigation is not warranted. [The law firm] may not be able to do this without jeopardizing its relationship with its large and very important client [the bank]. Therefore, an actual conflict exists, and disqualification of [the law firm] is required under the circumstances.

148 B.R. at 865–866. *See also Matter of Status Game Corp.,* 102 B.R. 19, 21–22 (Bankr.D.Conn.1989) (Court denied authority for Chapter 11 debtor to retain prepetition counsel because of counsel's past and current representation of debtor's principal secured lender.) Mr. Eachus performed a wide variety of tasks which largely shaped the companies financial and operational structure. It is inherently improper for such a professional to be closely associated with the major secured creditor, especially where the duties of the dual representation overlap.

Second, Mr. Lott was to create and own the entity which was contemplated to purchase the Debtor's assets under the Disclosure Statement and Plan. Representing both the buyer and the seller in a transaction is clearly a conflict of interest. *Rome,* 19 F.3d at 61 ("[S]imultaneous representation of the buyer and the seller in the same transaction is a prototypical disqualifying conflict of interest even if it is not invariably disqualifying in all circumstances."). As the Court in *In re Lee Way Holding Co.,* 100 B.R. 950, 957 (Bankr.S.D.Ohio 1989) explained:

> Without a question, the interests of TES, as purchaser, and the debtor, as seller, were adverse. If the sale was *bona fide,* as [the professional] states that it was, then the Court can infer that TES would have been motivated to seek a purchase of the equipment at the lowest price possible under terms most favorable to it. The debtor would have been seeking the opposite. [The professional], therefore, at different points in the transactions and negotiations resulting in the sale was representing the conflicting interests of TES and the debtor.

In the case at bar there was clearly a conflict of interest. Though the Plan contained provisions for the possibility of a greater bid, the fact that the business consultant facilitating the numerous business and financial dealings of the company was also retained by the major secured creditor could cause another purchaser to conclude that it was an inside deal. This, also, was inherently improper.

Finally, the work that Mr. Eachus did for Mr. Lott was directly involved with Unitcast matters. By his own admission, he was paid by Mr. Lott for arranging for Mr. Lott's payment for the product made by Unitcast of Canada to be sold by Unitcast of Toledo, for sales brokered by Mr. Lott. This is far beyond the scope of dual representation contemplated by § 327(c).

Nor may Mr. Eachus claim that the dual representation caused no harm. The Court is not required to speculate or accept as an excuse that the result was not detrimental to the estate. *Lee Way,* 100 B.R. at 957; *Georgetown,* 750 F.2d at 540, quoted supra.

■ Having concluded that an actual conflict of interest clearly exists, the issue of the appropriate sanction must now be addressed. In this regard, this Court must follow the Sixth Circuit cases of *In re Federated Dept. Stores, Inc.,* 44 F.3d 1310 (6th Cir.1995), *In re Eagle–Picher Industries, Inc.,* 999 F.2d 969 (6th Cir.1993), *In re Middleton Arms, Ltd. Partnership,* 934 F.2d 723 (6th Cir. 1991). In each of these cases the Court of Appeals made it very clear that a valid appointment under § 327 is a condition precedent for and award of compensation under § 330. *Federated,* 44 F.3d at 1320. In this case, however, Mr. Eachus was validly appointed, but later became non-disinterested. Following this precedent, it is very unlikely that it would be anything other than an abuse of discretion for this Court to allow a professional to receive any compensation after a becoming non-disinterested in a case such as this. See also *Georgetown,* discussed supra. Indeed, it would not be entirely surprising if under the Sixth Circuit precedent

no compensation should be allowed at all, though such a result seems rather harsh in this case, considering the time expended.

However, simply denying fees earned after a conflict of interest is found, especially here, where the conflict offends not only the Bankruptcy Code but professional standards as well, seems incomplete in its appropriateness. Allowing a professional to enter into what is clearly a conflicting representation and retain the benefits so derived, while merely sacrificing the fees earned in the future by the offended client, would enable professionals to effectively "jump ship" as waters become rough, notwithstanding their sinking client. Indeed, as in this case, it appears that the new client is in a much better position to be a more valued client for the professional in the long run. The Bankruptcy Code cannot be seen as promoting or condoning such a betrayal.

This Court is persuaded by the Tenth and Eleventh Circuit Courts of Appeals which have said:

> [I]n exercising the discretion granted by the statute we think the bankruptcy court should lean strongly toward denial of fees, and if the past benefit to the wrongdoer fiduciary can be quantified, to require disgorgement of compensation previously paid that fiduciary even before the conflict arose.

*In re Prince*, 40 F.3d 356, 360 (11th Cir. 1994), citing *In re Gray v. English*, 30 F.3d 1319, 1324 (10th Cir.1994). "This approach is most in keeping with common law fiduciary principles and best serves the deterrence purpose of the rule." *Gray* at 1324. Thus, a professional who enters into a conflicting representation should be denied fees not only for the work done after the conflicting representation, but also should be denied fees for work done before the conflicting representation to the extent that he has been paid by the conflicting creditor. See also *In re Downs*, 103 F.3d 472, 478 (6th Cir.1996) (Return of undisclosed retainer paid to professional was ordered paid to the estate even though it was not paid with estate money, because an attorney holds such a retainer in trust for the benefit of his client), discussed infra.

In this case, Mr. Eachus was paid Forty-two Thousand Two Hundred Eighty-nine and 07/100 Dollars ($42,289.07) for services performed for Mr. Lott and his family. Mr. Eachus claims to have undertaken representation of Mr. Lott in August of 1994. Accordingly, this Court will deny any compensation earned on or after August 1, 1994, and will further subtract Forty-two Thousand Two Hundred Eighty-nine and 07/100 Dollars ($42,289.07) from the pre-conflict fees requested.

█ Another independent basis for sanctions exists under § 329. Though § 329 addresses compensation to attorneys, and Mr. Eachus was employed as a business consultant, he nevertheless performed his business consulting services as an attorney. Further, he not only negotiated contracts, but at times wrote and revised them. Indeed, when questioned about his work for Mr. Lott, which was similar to the type of work he did for Unitcast, he invoked the attorney-client privilege.

Section 329 provides that an attorney must disclose any fee arrangement made after one year before the date of the filing of a the bankruptcy petition. Further, Bankruptcy Rule 2016 requires that a supplemental statement shall be filed and transmitted to the United States Trustee within 15 days after any payment or agreement not previously disclosed. The Sixth Circuit Court of Appeals has recently addressed § 329. *In re Downs*, 103 F.3d 472 (6th Cir.1996), cited supra. In *Downs*, a creditor in that case contacted an attorney to replace the existing attorney for the debtor, who had become ill. The new attorney was paid a Forty Thousand Dollar ($40,000.00) retainer from a company owned by the debtor's children, who had in turn received the money from the creditor that contacted the new attorney. After learning of the retainer, the Bankruptcy Court sanctioned the attorney Twenty Thousand Dollars ($20,000.00) by reducing his fee award by this amount for the failure to disclose.

The Sixth Circuit Court of Appeals held that it was clear that the attorney violated both § 329 and Rule 2016. *Id.* at 477. The

Court held that § 329 applied because the fee arrangement was made after the petition was filed, even though the professional was not the attorney on the petition date. *Id.* Further, the Court concluded that the Bankruptcy Court properly issued sanctions against the attorney, and that Bankruptcy Courts, like Article III Courts, enjoy inherent power to sanction parties for improper conduct. *Id.,* citing *In re Rainbow Magazine, Inc.,* 77 F.3d 278, 283–84 (9th Cir.1996). The Court also concluded that it did not matter that the retainer received and ordered to be paid to the estate was not originally property of the estate, because retainers paid to debtor's attorney are held in trust for the debtor, and the debtor has an equitable interest in the trust. 103 F.3d at 478.

Regarding the amount of the sanction, the *Downs* Court noted that the Bankruptcy Court's sanctions should not be disturbed unless a clear abuse of discretion is found, but that when sanctioning a court must exercise restraint and discretion, and the sanction must be commensurate with the egregiousness of the conduct. *Id.* at 478. However, the Court also concluded that with § 329 and Rule 2016 violations, courts have consistently denied all fees. *Id.,* citing *In re Futuronics Corp.,* 655 F.2d 463 (2nd Cir.1981); *In re Arlan's Dept. Stores,* 615 F.2d 925 (2d Cir. 1979); *In re Fricker,* 131 B.R. 932 (Bankr. E.D.Pa.1991); *In re Crimson Investments, N. V.,* 109 B.R. 397 (Bankr.D.Ariz.1989); *In re Kero–Sun, Inc.,* 58 B.R. 770 (Bankr. D.Conn.1986). The Court held that a complete denial of fees was the only appropriate sanction in that case, because the attorney acted affirmatively to conceal the arrangement, and continued to make appearances for the creditor in state court. 103 F.3d at 479. Because of the professional's callous disregard for his duties under Bankruptcy Code, the Court found that the Bankruptcy Court

had abused its discretion by allowing him to retain any fees. *Id.* at 480.

Though it would perhaps not be beyond its discretion, this Court does not feel that a denial of all fees earned in this case is appropriate. Though Mr. Eachus did not come forward himself with the conflict, he did not attempt to hide it when questioned.[3] Also, the efforts put forth by Mr. Eachus were substantial, and consumed a great deal of his time and constituted the bulk of his income for this period. Under the particular facts of this particular case, where the conflict arose late in the case, this Court finds complete denial is not appropriate. Rather, this Court finds that the sanction determined supra is appropriate in this case.

This Court has yet to determine the reasonableness of the fees requested. The Sixth Circuit has held that the lodestar method is the one that should be employed in determining professional's fees provided for under federal statutes, including the Bankruptcy Code. *In re Boddy,* 950 F.2d 334, 337 (6th Cir.1991).[4] This method was thoroughly analyzed and explained in *In re Allied Computer Repair, Inc.,* 202 B.R. 877, 883–88 (Bankr. W.D.Ky.1996), which this Court hereby adopts and will follow.

■ In this case, Mr. Eachus seeks Two Hundred Sixty-six Thousand Eight Hundred Forty-three and 47/100 Dollars ($266,843.47) for fees. However, in his fee application he states that he worked a total of Three Thousand Fifty-four and 25/100 (3,054.25) hours, plus spent another Eight Hundred Forty-two (842.00) hours in travel. Mr. Eachus billed Seventy-five Dollars ($75.00) per hour for services performed, and Thirty-seven and 50/100 ($37.50) per hour for travel. These hours and rates yield a total request of only Two Hundred Sixty Thou-

---

**3.** Mr. Eachus did, however, appear to "forget" when answering the UST's interrogatories that the subject matter of his representation of Mr. Lott was related to Unitcast. He more correctly defined the nature of this relationship in his affidavit submitted to the Court. Again, though the facts of this case could support a finding that could warrant total disgorgement, this Court declines to do so. Due to the length of the case and the substantial work it involved, this Court finds that it would be inequitable to have this conflict

taint Mr. Eachus's entire representation of debtor. Such a holding could subject professionals in long cases to too great a risk.

**4.** The analysis contemplated by the Court of Appeals in *Boddy* is similar to the one prescribed in the present version of § 330, after the Bankruptcy Reform Act changes of 1994. This Court also considered these factors in making its decision.

sand Six Hundred Forty-three and 75/100 Dollars ($260,643.75). This figure will be used as the starting point for Mr. Eachus's fee request.

These billing rates were approved by the Court at Mr. Eachus's initial appointment, and this Court sees no reason to presently question these rates. The Court does question, however, the number of hours billed. From a review of the fee application it appears that billings were made in time amounts that were excessive. Further, by not filing periodic fee applications as contemplated by § 331 and the order employing him, Mr. Eachus has denied this Court of the opportunity to adequately question these billings or to rein in such costs if necessary. Further, the fee request did not conform with the standards set out by the guidelines adopted by the Court or the United States Trustee's office. In particular, the fee application does not contain a billing summary for each project.

Finally, it must be remembered that it is the professional's burden to prove the reasonableness of the fees requested. It was not this Court's duty, or the duty of the attorneys for the Debtor–in–Possession or anyone else to see that Mr. Eachus met his professional obligations under the Bankruptcy Code and the fee guidelines. Though Mr. Eachus may be tempted to say that he contemplated that the attorneys for the Debtor–in–Possession would notify him of Bankruptcy Court requirements, such an assertion has no efficacy. Attorneys for a debtor-in-possession have a fiduciary duty to represent the debtor in the best interest of the bankruptcy estate. They do not represent the other professionals.

This Court does find, however, that Mr. Eachus performed some services that were reasonably necessary when performed. However, he has not shown the value of these services to correspond to the amounts requested in his fee application, which is his burden to do. That is, this Court finds that Mr. Eachus has not proven that he either actually expended the time he claims, or that expending such time was reasonable. Accordingly, this Court finds that a reduction of the fees requested by a third is warranted. That is, this Court finds that the reasonable hours billed to be excessive by one third, and will reduce the aggregate hours compensable, and therefore the fees requested, by this amount.[5] Mr. Eachus claims to have expended a total of Three Thousand Eight Hundred Ninety-six and 25/100 (3,896.25) hours on this case, yielding total fees in the amount of Two Hundred Sixty Thousand Six Hundred Forty-three and 75/100 Dollars ($260,643.75). However, according to the monthly billing totals provided, One Hundred Three Thousand Nine Hundred Twelve and 51/100 Dollars ($103,912.51) of this relates to services provided after Mr. Eachus undertook the conflicting representation of Mr. Lott. Two-thirds of the pre-conflict fees yields One Hundred Four Thousand Four Hundred Eighty-seven and 49/100 Dollars ($104,487.49). Subtracting further the amount of monies Mr. Eachus received from employment with the conflicting creditor in this case, Forty-two Thousand Two Hundred Eighty-nine and 07/100 Dollars ($42,289.07), and Mr. Eachus is left with a fee award of Sixty-two Thousand One Hundred Ninety-eight and 42/100 Dollars ($62,198.42).

This Court must also address the issue of expenses. Mr. Eachus has requested expenses in the amount of Forty-five Thousand Two Hundred Ninety-six and 27/100 Dollars ($45,296.27), of which Twenty-five Thousand Nine and 19/100 Dollars ($25,009.19) relates to expenses incurred after August 1, 1994, when the conflict arose. As with fee requests, requests for reimbursement of expenses incurred after the conflict of interest arises should also be denied. See *In re Federated Dept. Stores*, 44 F.3d at 1320 (Fees and costs incurred after professional should have known it was disqualified from

5. Under a lodestar analysis, this Court must determine the rate and the number of hours reasonable allowable. Because Mr. Eachus has billed at a reduced rate for travel time, this Court has calculated the average combined rate, that being Sixty-six and 90/100 Dollars ($66.90) per hour (total amount billed over total hours billed), and multiplied this by the total hours this Court finds unreasonable (two thirds of the total hours billed). This yields an amount equal to one third of the fees requested.

serving the debtor due to nondisinterestedness were not compensated and disgorgement was ordered.) As with his fees, it would not be appropriate for this Court to allow the reimbursement of expenses incurred after the conflict arose. Accordingly, Mr. Eachus' expense request will be reduced to Twenty Thousand Two Hundred Eighty-seven and 08/100 Dollars ($20,287.08).

Further, as with Mr. Eachus' fee request, the expense reimbursement request is belated and lacks proper detail. Again, this has robbed the Court of the ability to adequately determine its reasonableness, or to rein in costs. For example, Mr. Eachus billed a large amount for hotel fees. Had this Court been able to timely review these expenses, it could have directed the Debtor to furnish Mr. Eachus with an apartment for less, had this been appropriate. Accordingly, this Court will also reduce Mr. Eachus's pre-conflict expenses by one third, to an allowed amount of Thirteen Thousand Five Hundred Twenty-four and 72/100 Dollars ($13,524.72).

In conclusion, this Court will allow Mr. Eachus fees and expenses in the amounts of Sixty-two Thousand One Hundred Ninety-eight and 42/100 Dollars ($62,198.42), and Thirteen Thousand Five Hundred Twenty-four and 72/100 Dollars ($13,524.72) respectively. This brings the total allowed fees and expenses to Seventy-five Thousand Seven Hundred Twenty-three and 14/100 Dollars ($75,723.14). To date, Mr. Eachus claims to have received One Hundred Seventy-nine Thousand Two Hundred Sixty-four and 90/100 Dollars ($179,264.90) in fees, and Forty-five Thousand Two Hundred Ninety-six and 27/100 Dollars ($45,296.27) in expenses, for a total of Two Hundred Twenty-four Thousand Five Hundred Sixty-one and 17/100 Dollars ($224,561.17).

Accordingly, Mr. Eachus shall be ordered to return to the estate One Hundred Seventeen Thousand Sixty-six and 48/100 Dollars ($117,066.48) in fees, and Thirty-one Thousand Seven Hundred Seventy-one and 55/100 Dollars ($31,771.55) in expenses, for a total of One Hundred Forty-eight Thousand Eight Hundred Thirty-eight and 03/100 Dollars ($148,838.03). In reaching the conclusion found herein, the Court has considered all of the evidence, exhibits and arguments of counsel, regardless of whether or not they are specifically referred to in this opinion.

Accordingly, it is

*ORDERED* that as a final fee award William N. Eachus, Esq. will be, and is hereby, *ALLOWED* fees in the amount of Sixty-two Thousand One Hundred Ninety-eight and 42/100 Dollars ($62,198.42), and expenses in the amount of Thirteen Thousand Five Hundred Twenty-four and 72/100 Dollars ($13,524.72).

It is *FURTHER ORDERED* that Mr. Eachus *DISGORGE* to the bankruptcy Trustee the amount of monies paid to him in excess of the fees and expenses allowed. This amount is One Hundred Seventeen Thousand Sixty-six and 48/100 Dollars ($117,066.48) in fees, and Thirty-one Thousand Seven Hundred Seventy-one and 55/100 Dollars ($31,771.55) in expenses, for a total of One Hundred Forty-eight Thousand Eight Hundred Thirty-eight and 03/100 Dollars ($148,838.03).